COMMONWEALTH *vs.* CLIFTON LUMLEY.

Suffolk. January 7, 1975. — March 28, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Examination of jurors, Fair trial. *Constitutional Law,* Due process of law.

This court reaffirmed its decision in *Commonwealth v. Ross,* 363 Mass. 665 (1973), that questions to prospective jurors in criminal trials designed to discover possible racial prejudice are constitutionally mandated only when the defendant is a "special target for racial prejudice." [214-216]

A motion by the defendant at a criminal trial that the judge interrogate prospective jurors as to possible racial prejudice by specific questions should be granted if, after the judge ascertains that the defendant's decision is knowingly and voluntarily made and with an understanding of possible consequences, the defendant insists upon the questions. [216-217]

A black defendant convicted under an indictment charging robbery of a white woman was not denied due process under the Fourteenth Amendment to the United States Constitution by the refusal of the trial judge to put questions to the venire on voir dire relating to possible racial prejudice where the facts of the case, and the al-

legations of the defendant, who did not testify, did not indicate that he was a special target for racial prejudice, and it appeared that he was acquitted under indictments for committing two other crimes against the same woman at a joint trial of the three indictments. [217-224]

INDICTMENT found and returned in the Superior Court on March 7, 1972.

The case was tried before *Paquet*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Edward F. Haber* for the defendant.

*William J. Doyle*, Assistant District Attorney, for the Commonwealth.

TAURO, C.J.    The defendant is here on an amended bill of exceptions after conviction under an indictment charging robbery.    He was also tried and found not guilty under indictments charging him with the commission of an unnatural and lascivious act and assault and battery.    We overrule the exceptions.

In this case, we are required once again to consider the scope and applicability of the United States Supreme Court's holding in *Ham* v. *South Carolina*, 409 U. S. 524 (1973).    In *Commonwealth* v. *Ross*, 363 Mass. 665 (1973), cert. den. 414 U. S. 1080 (1973), we said that "[w]e do not believe that the *Ham* case announced a new broad constitutional principle requiring that questions, designed to discover possible racial prejudice, be put to prospective jurors in all State criminal trials when the defendant is black." *Id.* at 671.    We went on to say that such questions are constitutionally mandated only when the defendant was a "special target for racial prejudice," (*id.* at 672) as the defendant in the *Ham* case had been.    Our holding in the *Ross* case has been followed consistently by this court.    See *Commonwealth* v. *Ryles*, 363 Mass. 674, 676 (1973), cert. den. 414 U. S. 980 (1973); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 92-93 (1973); *Commonwealth* v. *Bumpus*, 365

Mass. 66, 67 (1974); *Commonwealth* v. *Pinckney*, 365 Mass. 70, 73 (1974). Today we reaffirm that holding.

The circumstances in the *Ham* case were novel. The defendant, a young black man, was well known as a civil rights activist in the small community where he had resided for most of his life. At the time of his trial, he had no prior record of convictions. His principal defense was that the local law enforcement authorities were "out to get him" because of his civil rights activities and had "framed" him on the charge of marihuana possession. With this factual background, the United States Supreme Court reversed his conviction. The court held that the trial judge in the voir dire improperly failed to examine potential jurors on the issue of racial bias. Mr. Justice Rehnquist, writing for the court, carefully limited the holding to the facts in the case: "The State having created this statutory framework for the selection of juries, the essential fairness required by the Due Process Clause of the Fourteenth Amendment requires that *under the facts shown by this record* the petitioner be permitted to have the jurors interrogated on the issue of racial bias" (emphasis supplied). *Ham* v. *South Carolina*, 409 U. S. 524, 527 (1973).

Racial issues infected the entire *Ham* trial. The issues were inescapably and powerfully before the jurors. Bias formed the heart of the defense. The defendant rightfully contended that bias, official and covert, was the sole cause and foundation for the prosecution. The defendant fought bias in his civil rights activities, undoubtedly known to jurors drawn from the locality. Any latent bias harbored by the jurors would likely have been activated by the case and would have defeated the defendant's efforts to achieve acquittal. When the racial issues were so salient and Ham, himself, was a special target for prejudice, the due process clause plainly entitled Ham to have the judge examine jurors for racial prejudice.

Yet, in the light of the language of Mr. Justice Rehnquist quoted above, we do not believe that the due process clause mandates such examination in every case in which there is a black defendant.[1] We adhere to our prior holdings, cited above, that the defendant must be a special target for prejudice before the constitutional guaranties are invoked.

In the ordinary case, inquiries beyond the statutory questions, which raise generally the issue of bias, rest in the sound discretion of the trial judge. *Commonwealth v. Nassar*, 354 Mass. 249, 253 (1968). Absent the above mentioned factors which make the defendant a special target for racial prejudice, there is no constitutional compulsion to ask questions beyond the statutory questions. "[T]he statutory questions . . . [are] sufficient to insure the 'essential demands of fairness' required by the Fourteenth Amendment." *Commonwealth v. Ryles*, 363 Mass. 674, 676-677 (1973), cert. den. 414 U. S. 980 (1973). However, as a practical matter, when a motion that prospective jurors be interrogated as to possible prejudice is presented, we believe the trial judge should grant that motion.[2] Such a motion, raising as it does difficult issues of jury psychology and potential injury to

---

[1] We are aware that the holding in *Aldridge* v. *United States*, 283 U. S. 308 (1931), which was relied on in part in the *Ham* case, has broader implications. However, we do not believe it necessitates a broader reading of the *Ham* holding. The court in the *Ham* case observed that the *Aldridge* case arose "in a context where its [the Supreme Court's] authority within the federal system of courts allows a good deal closer supervision than does the Fourteenth Amendment" (*Ham* v. *South Carolina*, 409 U. S. 524, 527 [1973]) and that the holding "was not expressly grounded upon any constitutional requirement." (*Id.* at 526.) We believe that, if the *Aldridge* precedent has been given constitutional dimensions, it "is to be limited to special circumstances as indicated by the *Ham* case." *Commonwealth* v. *Ross*, 363 Mass. 665, 672 (1973), cert. den. 414 U.S. 1080 (1973).

[2] Our information indicates that, since the *Ham* decision, such motions are being granted routinely in the Superior Court.

the defendant's case, should come from the defendant himself. Before granting the motion, the trial judge should carefully ascertain that the defendant's decision to insist on specific questions regarding racial bias was a knowing and voluntary one, made with an understanding that such specific questions may activate latent racial bias in certain prospective jurors or may insult others without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice.[3]   If, thereafter, the defendant insists that specific questions concerning bias be asked, the judge should propound such questions to the veniremen. The decision then has been the defendant's to make. Granting the request for special interrogation may avoid needless appeals which lack constitutional substance under our interpretation of the *Ham* case.[4]

This court's interpretation of the *Ham* case was before the United States Court of Appeals for the First Circuit

---

[3] The judge might suggest to the defendant that a desirable alternative to specific questions would be a forceful instruction to the jury which would caution jurors against bias in their deliberations.

[4] The broader implications of the *Ham* case pose troubling problems for our system of criminal jurisprudence. Are black veniremen and women to be interrogated as to their possible racial prejudice against blacks or against whites? Assume a judge puts such questions to prospective jurors over a black defendant's objection. Would that constitute reversible error (following conviction)? Would not the judge be asking the prospective juror if he would believe the defendant in spite of the fact that he is black? What of the situation where two codefendants are black, and one wants the interrogation and the other does not? Does this mean that severance is automatically required? This could cause much difficulty, especially where the cases should be tried together because the defendants had engaged in a joint criminal venture or in a criminal conspiracy.

The holding in the *Ham* case can, of course, also be carried to extremes. In a recent case in the Superior Court, a defendant of Polish antecedents requested that prospective jurors be interrogated as to possible racial bias. *Commonwealth* v. *Lewinski*, Suffolk Crim. Docket No. 76961 (1974). In a recent New York case a defendant of Italian ancestry made a similar motion. *People* v. *Rubicco*, 42 App. Div. 2d (N. Y.) 719 (1973), affd. 34 N. Y. 2d 841 (1974).

recently in *Ross* v. *Ristaino,* 508 F. 2d 754 (1st Cir. 1974), an application for a writ of habeas corpus filed by the defendant in *Commonwealth* v. *Ross.* The Court of Appeals, by a divided court, did not attempt to "resolve . . . [the] ambiguity" it found in the *Ham* opinion and, for purposes of argument, accepted the requirement that the defendant be a special target for prejudice. *Id.* at 756. The court, with Judge Moore dissenting, then approved an implicit finding of the Federal District Court that "a black defendant charged with violent crimes against a white security officer would be likely to be a special target of racial prejudice." *Ibid.*

"[A]lthough we give respectful consideration to such lower Federal court decisions as seem persuasive," we are, of course, "not concluded by decisions of . . . [lower] Federal courts." *Commonwealth* v. *Masskow,* 362 Mass. 662, 667 (1972). We cannot agree that the mere accusation of a black defendant in a crime with a white victim or the fact that the victim is a security guard constitutes "circumstances which reasonably present the issue of racial prejudice" (*Commonwealth* v. *Ryles,* 363 Mass. 674, 676 [1973], cert. den. 414 U. S. 980 [1973]), and make the defendant a special target for racial prejudice. See *Commonwealth* v. *Ross,* 363 Mass. 665, 672 (1973), cert. den. 414 U. S. 1080 (1973); *Commonwealth* v. *Bumpus,* 365 Mass. 66 (1974). "We have several times indicated that the fact that the defendant is black and the victim white does not suffice to bring a case within the *Ham* rule and to require specific questions by the trial judge as to possible prejudice among the veniremen." *Commonwealth* v. *Bumpus, supra,* at 67. The ethnic identities of the defendant and victim, without other factors underscoring the racial elements of the case and their specific application to the defendant, are insufficient to invoke the special precautions of the *Ham* case. The victim's occupation alone is not one such factor.

It is appropriate at this point to note that the expansive construction of the *Ham* holding adopted by the United States Court of Appeals for the First Circuit would have a calamitous impact on the criminal justice systems of many States if the construction were accepted as good constitutional law and applied retroactively[5] to all prior trials. Reliance on former constitutional standards, which left the specific content of voir dire questions in State courts to the trial judge, for many years was widespread in this and other jurisdictions. See, e.g., *Commonwealth* v. *Ross*, 361 Mass. 665 (1972), judgment vacated 410 U. S. 901 (1973), affd. on rehearing 363 Mass. 665 (1973), cert. den. 414 U. S. 1080 (1973); *State* v. *Ham*, 256 S. C. 1 (1971), revd. 409 U. S. 524 (1973). The prior case law and Supreme Court decisions gave no forewarning that certain specific questions concerning racial bias might be obligatory as a matter of Fourteenth Amendment due process. If the First Circuit's construction of the *Ham* case were given retroactive, general application, many of those convicted and incarcerated after otherwise fair trials, which had resulted in deserved convictions, would be able to come before State and

---

[5] We have no doubt that the limited rule announced in the *Ham* case should be given retroactive effect. In the circumstances of that case, where the defendant was a special target for racial prejudice, failure to interrogate jurors concerning racial bias materially tainted the outcome of the trial. "Where [as in the *Ham* case] the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect." *Williams* v. *United States*, 401 U. S. 646, 653 (1971) (plurality opinion). See, e.g., *Witherspoon* v. *Illinois*, 391 U. S. 510, 523, n. 22 (1968); *McConnell* v. *Rhay*, 393 U. S. 2, 3-4 (1968); *Ivan V.* v. *City of New York*, 407 U. S. 203, 204 (1972).

We strongly question whether the enlargement of the holding in the *Ham* case proposed by the First Circuit, if accepted as good constitutional law, should be accorded retroactive effect. See *Ross* v. *Ristaino*, 508 F. 2d 754 (1st Cir. 1974) (Moore, J., dissenting). Cf. *DeStefano* v. *Woods*, 392 U. S. 631 (1968); *Daniel* v. *Louisiana*, 420 U. S. 31 (1975).

Federal courts seeking relief from those convictions. While we lack precise statistics as to the number of convicted defendants potentially affected (cf. *Tehan* v. *United States ex rel. Shott,* 382 U. S. 406, 418 [1966]), our experience suggests that the number is significant. Prior to any amplifying construction of the *Ham* case or any ruling of retroactivity, seven convicted defendants[6] have asked us to reverse their convictions because, they contended, failure to interrogate jurors specifically about racial prejudice abridged their rights under the due process clause. Without doubt, many more will surface if the First Circuit's construction of the *Ham* case is accepted and given retroactive effect. Each claimant would be entitled to a hearing on the issue whether he had requested that a question as to racial bias be put to potential jurors. Each claimant who had been successful in that initial stage of the hearing would then attempt to prove that the circumstances of his case fit within the enlarged *Ham* rule. The hearings and consequent appeals alone[7] would severely exacerbate the intolerable congestion of our already congested criminal sessions. The plethora of proceedings would disrupt the orderly administration of criminal justice and preclude consideration of other cases in our criminal courts. These practical considerations buttress our belief that, as a matter of constitutional principle, the *Ham* holding is properly restricted quite narrowly to the special circumstances presented by that case and similar cases.

With this view of the law in mind, we turn now to the evidence in the instant case, before us on the defendant's

---

[6] See *Commonwealth* v. *Ross,* 363 Mass. 665 (1973), cert. den. 414 U. S. 1080 (1973); *Commonwealth* v. *Ryles,* 363 Mass. 674 (1973), cert. den. 414 U. S. 980 (1973); *Commonwealth* v. *Rodriquez,* 364 Mass. 87 (1973) (two defendants); *Commonwealth* v. *Bumpus,* 365 Mass. 66 (1974); *Commonwealth* v. *Pinckney,* 365 Mass. 70 (1974). The instant defendant is the seventh.

[7] New trials would follow in some cases.

amended bill of exceptions. The Commonwealth's evidence tended to show the following. On February 19, 1972, the victim, a white woman, working as a cocktail waitress, canvassed the Prudential Center area of Boston in search of new employment. Unsuccessful in her search, she was walking along Boylston Street when she was accosted by the defendant. He asked her why she looked so depressed. On being told of her failure to find a new job, he offered to help and suggested that they repair to his apartment to discuss the matter. The victim at first refused, but then acquiesced.

There was further evidence that at the defendant's apartment the two engaged in general conversation for some time. As the conversation progressed, the victim became increasingly uneasy. When she stood up to leave, the defendant began to caress her body. She protested, but was ultimately forced to disrobe and engage in unnatural acts with the defendant.

The victim remained in the defendant's apartment overnight. At one point, she attempted to escape[8] and was apprehended by the defendant. He then barricaded the door with a chest. Later, the victim was again forced to engage in sexual acts with the defendant.

The following morning the victim was permitted to leave. However, before her departure the defendant searched her belongings and removed $47. This money was recovered by the police when they arrested the defendant shortly after the victim's release.

At trial, the defendant was convicted of robbery, but was acquitted of assault and battery and commission of an unnatural and lascivious act. Notwithstanding his acquittal on the charges involving sex and violence, the defendant argues[9] forcefully that the sexual overtones of the case present a special circumstance which entitled

[8] The testimony regarding the "escape" conflicted in several material respects.

[9] The other exceptions taken at trial have not been argued or

him to have questions concerning racial bias[10] put to the venire in the voir dire. We cannot agree that the refusal of the judge so to interrogate the prospective jurors required reversal in this case.

We cannot say that the facts of this case made the defendant more a special target for racial prejudice than any other black defendant who allegedly committed a crime of violence against a white victim. This case does not present the racial issues more vividly than a case involving a "brutal and unprovoked attack" on a white security guard who "received serious, multiple stab wounds" (*Commonwealth* v. *Ross,* 361 Mass. 665, 668 [1972], judgment vacated 410 U. S. 901 [1973], affd. on rehearing 363 Mass. [1973], cert. den. 414 U. S. 1080 [1973]), or a murder of a white bank officer in the course of a bank robbery (*Commonwealth* v. *Bumpus,* 365 Mass. 66 [1974]). The defendant did not allege any racial motivation on the part of arresting officers or specify any circumstances beyond the facts of the crime which would have led the jurors to think particularly of the racial context. There was no allegation or proof, as there had been in the *Ham* case, that the defendant's

---

briefed by the defendant's counsel and are deemed waived. *Commonwealth* v. *Baldassini,* 357 Mass. 670, 679 (1970).

[10] The requested questions relating to racial bias which the trial judge refused to put to the venire were:

"2. Will you be influenced in any way, either pro or con, by the race of Clifton Lumley?"

"3. Would you be able to give a black man accused of unnatural sexual acts with white women the same benefit of the doubt that you would give to a white defendant accused of unnatural sexual acts with black women?"

"9. Do you live in an integrated neighborhood?"

"10. If Negroes moved into your neighborhood, would you be more afraid of crime than you are now?"

"11. Would you be able to give a black man accused of unnatural sexual acts with a white woman the same benefit of doubt that you would give to a defendant accused of unnatural sexual acts with a woman of his own race?"

arrest and prosecution had been undertaken in reaction to civil rights organizing or racially provocative activities. We note here that the jury acquitted the defendant of the sexual charges which, he alleged, were highly inflammatory and potentially prejudicial. Though obviously the acquittal cannot establish the constitutional sufficiency of the voir dire interrogation, it is strong evidence that the jurors were, in fact, impartial and that the voir dire conducted by the trial judge was appropriate in these circumstances. Would the result have been the same if the judge had underscored the racial issue by putting pointed questions to the potential jurors? "[A trial] judge might well conclude that specific questions would be counter-productive and serve to inject racial bias into the trial rather than to remove it." *Commonwealth* v. *Bumpus*, 365 Mass. 66, 67 (1974).

There is no merit in the defendant's further contention that the *Ham* case is applicable here on the ground that the key issue in the instant case was the victim's credibility. It is true that in *Commonwealth* v. *Ross*, 363 Mass. 665 (1973), cert. den. 414 U. S. 1080 (1973), we said: "The posture of the [*Ham*] case thus placed great emphasis on the issue of the credibility of the defendant in light of his reputation as opposed to that of the credibility of the police." *Id.* at 666. However, a conflict of testimony alone is insufficient to bring a case within the doctrine of the *Ham* case. In *Commonwealth* v. *Pinckney*, 365 Mass. 70 (1974), we held that the fact that "the defendant took the stand and that his credibility as opposed to that of white witnesses was the crux of the case is not enough to create special circumstances requiring that specific questions on racial prejudice be put to the venire." *Id.* at 73. In addition, even if a conflict of testimony by the black defendant and white witnesses would be sufficient to "requir[e] that specific questions on racial prejudice be put to the venire" (*ibid.*), no such conflict arose in the instant case. The defendant did not take the stand to testify. *Commonwealth* v.

*Ryles,* 363 Mass. 674, 676 (1973), cert. den. 414 U. S. 980 (1973). The jurors had to decide only whether they credited the testimony of the victim in the light of the other evidence.

The denial of the defendant's motion to put the special questions to the prospective jurors was not a denial of due process under the Fourteenth Amendment.

*Exceptions overruled.*