## COMMONWEALTH *vs.* HARVEY M. SANDERS.

Middlesex. May 12, 1980. — July 23, 1980.

Present: HALE, C.J., KASS, & NOLAN, JJ.

*Jury and Jurors. Practice, Criminal,* Examination of jurors, Instructions to jury.

At the trial of a black defendant charged with the rape and assault and battery of a white woman, the judge did not abuse his discretion in refusing to conduct an individual voir dire examination of each prospective juror or to ask questions concerning racial prejudice. [331-333]

At a criminal trial, the judge's instructions with respect to the defendant's exercise of his right not to testify were not, in the context of the entire charge, erroneous. [333-334]

INDICTMENTS found and returned in the Superior Court Department on September 8, 1978.

The cases were tried before *Tamburello*, J.

*Brownlow M. Speer* for the defendant.

*Susan C. Mormino*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant has appealed from convictions on indictments charging rape (G. L. c. 265, § 22), entering a dwelling house while armed with a dangerous weapon and therein assaulting another with intent to commit a felony (G. L. c. 265, § 18A), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A), and while armed with a dangerous weapon breaking and entering a dwelling house in the nighttime with intent to commit a felony and making an actual assault on a person lawfully therein (G. L. c. 266, § 14).[1] We briefly summarize the evidence before the jury.

---

[1] He was acquitted on an indictment charging armed assault with intent to murder (G. L. c. 265, § 15).

On August 30, 1978, the victim was awakened at 2:00 A.M. by a pain in the back of her head caused by someone pulling her hair. She saw a man lying in bed next to her. She could see him very clearly as the bedroom was in the front of the house, facing the street, and was well lit by three street lights in front of the victim's apartment. Her assailant, holding a knife to her mouth, told her that he just wanted some sex. He called her "bitch" and repeatedly said he was going to stab and kill her. The victim tried to stall and asked the man his name. He responded that it was Michael. He then stabbed her in the lip, left arm, chest and ear and struck her many times around her head. There was a further struggle, the details of which we need not summarize, which concluded with the assailant fleeing the apartment and the victim calling the police. The police responded immediately and were given a detailed description of the assailant by the victim. A short time later the defendant was observed by police on Cambridge Common. The police noted that he matched the description given by the victim and that he was ducking up and down by a water fountain, looking in every direction. He was approached by the police. One of them asked his name, and the defendant replied that it was Michael. The victim was then brought to the Common, where she made a positive identification of the defendant as her assailant.

The defendant argues two errors in this appeal: (1) that the judge erred in refusing to allow the defendant to examine prospective jurors for racial prejudice and (2) that the judge's charge on the defendant's exercise of his right not to testify was erroneous.

1. The defendant filed a motion seeking to have the judge allow an individual voir dire examination of each juror to determine whether each juror stood indifferent. He proposed that the prospective jurors be asked thirteen questions, which he set out in the motion, together with any other questions to which the answers to the original thirteen questions might give rise. The judge said he would give the statutory questions (G. L. c. 234, § 28, first par.), together

with six of the thirteen requested questions and indicated the six by number. He informed the defendant that he would do so "en banc." The judge also inquired of defense counsel his reasons "for asking me to interrogate regarding racial prejudice." Counsel responded by saying that the defendant was black and the victim was a very attractive white girl. He also told the judge that the crimes charged were serious, that one charged rape, and that "[p]eople have a great many feelings on the subject of, number one, rape; and also rape of a white girl by a black man." The defendant indicated that his position was that because of these facts there was a significant possibility that the jury would be affected by racial prejudice. The judge refused the request.[2]

We look first to whether the judge erred in refusing to conduct or to permit the attorneys to conduct an individual voir dire examination of each prospective juror as provided in the second paragraph of G. L. c. 234, § 28, as amended through St. 1975, c. 335. The provisions of this paragraph become operative only when it is shown that there is a "substantial risk that [the case] would be decided on extraneous considerations." *Commonwealth* v. *Campbell*, 378 Mass. 680, 696 (1979). We do not consider the reasons stated by the defendant to be sufficient to show such a risk. The mere fact that the victim and the defendant are of different races does not entitle the defendant to inquire individually into the racial attitudes of prospective jurors. *Commonwealth* v. *Yancee*, 8 Mass. App. Ct. 884 (1979). See *Ristaino* v. *Ross*, 424 U.S. 589, 590, 597 (1976). Nor does the fact that the interracial crime was of a sexual nature create a substan-

---

[2] The judge did instruct the veniremen that no one who had any prejudice against blacks or harbored other prejudice of various kinds should sit on a jury. He emphasized that the color of a defendant should make no difference in a court of law. He then asked them the statutory and the requested questions he had allowed and heard responses from a number of prospective jurors before proceeding with the jury selection process from those of the venire who had not been excused. See *Commonwealth* v. *Lumley*, 367 Mass. 213, 217 n.3 (1975).

tial risk of a decision on extraneous grounds which would entitle the defendant to individualized inquiry under the statute. See *Commonwealth* v. *Lumley*, 367 Mass. 213, 221-222 (1975); *Dukes* v. *Waitkevitch*, 536 F.2d 469, 470-471 (1st Cir.), cert. denied, 429 U.S. 932 (1976). While it is generally advisable to inquire into racial prejudices in circumstances such as these (*Yancee, supra* at 885; see *Ristaino* v. *Ross, supra* at 597 n.9), it was within the judge's discretion to deny defense counsel's request to ask questions concerning racial prejudice since such inquiry was not required by G. L. c. 234, § 28. *Campbell*, 378 Mass. at 696 n.12.

2. The defendant chose not to testify, and the judge instructed the jury on his right not to do so. The defendant specifically excepted to two portions of that part of the instructions: the judge's comments on the historical background of the right not to testify; and the judge's reference to the defendant's "right to simply deny his guilt, and to rely upon the legal presumption of his innocence."

The three opening sentences of the instructions concerning the defendant's right not to testify were as follows:

> "In this case the defendant has not testified. Up until about one hundred years ago in this State defendants weren't allowed to testify, even when their life was at stake. The theory at that time was that if you testified you would testify in your own behalf, and you probably couldn't be trusted."

In most instances it would be better to omit the historical background of current rules of law from the judge's explanation to the jury, because the risk of confusion may outweigh any possible benefit. See *Commonwealth* v. *Therrien*, 371 Mass. 203, 208 (1976). However, in this instance the risk of confusion was minimal since the judge immediately told the jury, "But the law has been changed. A person may testify if he wishes." He then clearly and correctly instructed the jury on the defendant's right not to testify and several times

informed them that the defendant's silence was not to be used against him "in any way whatsoever." After the defendant noted his exception to the charge, the judge gave a further instruction reiterating a nontestifying defendant's rights and protections. We are satisfied that this part of the charge, viewed in its entirety, adequately informed the jury of the defendant's right not to testify and steered them away from drawing any improper inferences from the defendant's decision not to do so. See *Commonwealth* v. *Garcia,* 379 Mass. 422, 441 n.12 (1980).

The further contention that the judge's statement concerning the defendant's right to "deny his guilt" gave the jury the impression that the defendant's guilt was an objective fact is, strictly speaking, not properly before us on appeal. This was not the basis offered at trial for taking an exception to the judge's statement.[3] *Commonwealth* v. *Williams,* 379 Mass. 600, 604 (1980). Nevertheless, were we to consider this argument, we would find it without merit. Viewing the statement in the context of the charge as a whole, and particularly in light of the judge's clear instructions regarding the presumption of innocence and the Commonwealth's burden of proving its case beyond a reasonable doubt, we are satisfied that the statement did not convey an improper impression.

*Judgments affirmed.*

---

[3] At trial the defendant argued that the judge's statement improperly suggested that if the defendant were innocent, he would have taken the stand to deny his guilt.