COMMONWEALTH *vs.* PETER H. STEPHENS.[1]

Suffolk.  November 8, 1982. — March 16, 1983.

Present: HALE, C.J., CUTTER, GREANEY, PERRETTA, & DREBEN, JJ.

*Jury and Jurors.  Practice, Criminal,* Examination of jurors.

Although this court found no reversible error in a judge's refusal to ques-
tion jurors as to racial prejudice pursuant to the second paragraph of
G.L. c. 234, § 28, at the request of a black defendant charged with
deriving support from the earnings of a white prostitute, it held that in
future cases, where a  defendant of one race is charged with deriving
support from the earnings of a prostitute of another race and there is
evidence of physical violence against the prostitute, jurors are to be ex-
amined individually with respect to racial prejudice if such examina-
tion is requested by the defendant. [463-466] HALE, C.J., and CUT-
TER, J., concurring in the result, expressed the opinion that the tradi-
tional discretion of trial judges respecting such questioning should not
be restricted. [467-468]
At the trial of a defendant charged with deriving support from the earn-
ings of a prostitute, the judge did not abuse his discretion in refusing to
ask jurors whether they would give more credence to a police officer's
testimony than to that of other witnesses. [466]
At the trial of a defendant charged with deriving support from the earn-
ings of a prostitute, there was no error in the admission of evidence
that the defendant and the prostitute had become addicted to the use
of heroin. [466-467]

INDICTMENT found and returned in the Superior Court
Department on June 11, 1981.

The case was tried before *Cameron,* J., a District Court
judge sitting under statutory authority.

---

[1] This case was initially heard by a panel comprised of the Chief Justice
and Justices Cutter and Dreben and was thereafter submitted on the
record and briefs to Justices Greaney and Perretta, all of whom took part
in the decision of this case in accordance with the provisions of Mass.R.A.
P. 24 (a), 365 Mass. 872 (1974).

*Janice Bassil* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

DREBEN, J.   The defendant, a black man, was convicted on an indictment charging him with knowingly deriving support and maintenance from the earnings of a prostitute. The victim was a white woman.   Prior to trial the defendant, citing G. L. c. 234, § 28,[2] and *Commonwealth* v. *Sanders,* 383 Mass. 637 (1981), moved that certain questions, including one directed to racial prejudice and another relating to the credibility of police officers, be put to each juror individually outside the presence of other jurors.   Accompanying his motion was an affidavit of counsel indicating that "it is anticipated that there may be testimony concerning the use of physical force by the defendant against the victim."

---

[2]As amended through St. 1975, c. 335, G.L. c. 234, § 28, reads as follows:

"Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein; and the objecting party may introduce other competent evidence in support of the objection.  If the court finds that the juror does not stand indifferent in the case, another shall be called in his stead.

"For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall, or the parties or their attorneys may, with the permission and under the direction of the court, examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or other matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case.  Such examination may include a brief statement of the facts of the case, to the extent the facts are appropriate and relevant to the issue of such examination, and shall be conducted individually and outside the presence of other persons about to be called as jurors or already called."

The principal claim of error relates to the refusal by the judge to conduct an individual examination of jurors. We affirm. Those who join fully in this opinion conclude, nevertheless, that in trials for this offense (G. L. c. 272, § 7) held hereafter where the defendant is of one race and the victim is of another, and there is an expectation that evidence of violence or a threat of violence will be introduced at trial, G. L. c. 234, § 28, second par. must be applied, if requested by the defendant.

1. The motion for individual examination of jurors was heard just before the trial began. The judge asked defense counsel whether she had "any evidence of any potential racial issue here, other than the fact that the defendant happens to be black and the alleged victim happens to be white." Counsel referred to *Commonwealth* v. *Sanders*, 383 Mass. 637 (1981), which held as matter of law that such inquiry was required in future interracial rape trials, and to allegations in her own affidavit, "of some issues of physical force . . . against the victim."[3]

The trial judge denied the motion, concluding that interrogation was not constitutionally required as the defendant was not a "special target for racial prejudice," *Commonwealth* v. *Ross*, 363 Mass. 665, 672, cert. denied, 414

---

[3] There indeed was, as the trial developed, evidence of physical force employed by the defendant against the victim. The latter gave the following account of her relationship with the defendant, which began when the victim was fourteen and Stephens around sixteen. She loved Stephens and had a son by him when she was sixteen. Later, when both "got our heroin habit," she, on the prodding and instruction of the defendant, became a prostitute with Stephens as her pimp. On occasion, Stephens became violent with her and, as a result, she was hospitalized several times. Once he punched her in the mouth, causing her to lose five front teeth. Another time he pulled a board out of the bannister and hit her on the back, head and legs. She worked seven nights a week, fifty-two weeks a year to support their habit and earned approximately $70,000 a year, all of which she turned over to the defendant. Several times she left him. "Every time I left him, it was because I got a beating . . . . And I didn't feel like staying there like the way I was, because I would have to go out like that and I looked ridiculous." The victim finally left the defendant when he became involved with another woman.

U.S. 1080 (1973) (with dissents), habeas corpus granted sub nom. *Ross* v. *Ristaino*, 388 F.Supp. 99 (D. Mass.), aff'd, 508 F.2d 754 (1st Cir. 1974), rev'd, 424 U.S. 589 (1976), and that the case was not really an interracial rape case governed by *Sanders*.   He did, however, ask the jurors collectively whether their knowledge that the defendant was black and the victim was white would "affect" their "impartiality to render a fair verdict based upon the evidence."

In denying the defendant's request, the trial judge failed to heed the advice of *Commonwealth* v. *Lumley*, 367 Mass. 213, 216 (1975), that "as a practical matter, when a motion that prospective jurors be interrogated as to possible prejudice is presented, . . . the trial judge should grant that motion." See *Rosales-Lopez* v. *United States*, 451 U.S. 182, 191 (1981) ("usually best to allow the defendant . . . [to determine] whether or not he would prefer to have the inquiry into racial or ethnic prejudice pursued").   See also *Commonwealth* v. *Yancee*, 8 Mass. App. Ct. 884, 885 (1979).

It is true that in the absence of "special circumstances" interrogation of jurors as to racial prejudice is not constitutionally required.   *Commonwealth* v. *Ross*, 363 Mass. at 672. *Commonwealth* v. *Sanders*, 383 Mass. at 641. *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873-874 (1982). *Commonwealth* v. *Sowers*, 388 Mass. 207, 213 (1983).   It is also true that the crime involved here is not interracial rape and thus not strictly within the rule of *Commonwealth* v. *Sanders*.

We do not view *Sanders*, however, as deciding that only rape cases evoke, as matter of law, a "special reaction to the facts," *Rosales-Lopez* v. *United States*, 451 U.S. at 196 (Stevens, J., dissenting), or, as stated in G. L. c. 234, § 28, "considerations which may cause a decision . . . to be made in whole or in part upon issues extraneous to the case."   In *Sanders*, at 640, the court concluded, after reviewing *Commonwealth* v. *Lumley* (whose "practical" advice we alluded to above) and later cases involving G. L. c. 234, § 28, second par., that its previous decisions had "given insufficient force" to the statute.

In *Commonwealth* v. *Hobbs,* 385 Mass. at 873, decided after the present case was tried, the court held that other interracial crimes would also, as matter of law, create a substantial risk of bias so as to require the application of § 28, second par. "In the sensitive area of racial prejudice . . . we have imposed more specific limits on judges' discretion" to determine whether extraneous issues bring the statute to bear. *Ibid. Hobbs* prescribed that the procedure of *Sanders* be followed in all future trials involving interracial sexual offenses against children.

Those who join fully in this opinion believe that cases, like the one at bar, which involve both sex and violence between members of different races, also present as matter of law "a substantial risk that extraneous issues will influence the jury." *Commonwealth* v. *Sanders,* at 640-641. Where, as here, a black pimp is charged with exploiting a white woman by deriving support and maintenance from the earnings and proceeds of her prostitution and there is also evidence of physical violence against the victim, we think the facts are "equally likely to inflame racial prejudice as was the interracial rape in *Sanders." Commonwealth* v. *Hobbs, supra* at 873. Accordingly, in all future trials of the crime here charged involving an interracial relationship, where at the time of the request under G. L. c. 234, § 28, second par., it appears likely that there will be evidence of physical violence or a threat of physical violence against the victim the procedures and cautionary measures outlined in *Sanders* must be followed if requested by the defendant. Compare *Rosales-Lopez* v. *United States,* 451 U.S. at 192, indicating that juror interrogation is required in Federal courts when requested by "a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups."

In both *Sanders* at 640-641, and *Hobbs* at 873, the Supreme Judicial Court ruled that the defendants were not entitled to reversals in their own appeals because the holdings were based, "not on a constitutional mandate, but on the need for caution and certainty in the application of

§ 28." Since our application of § 28 to this crime is for the same reasons, we have followed the rule set forth in those cases that error in the application of the statute to a different crime is to be remedied prospectively. Accordingly, the defendant's conviction is not to be reversed.

2. The trial judge did not err in refusing to inquire of the jurors whether they would give more credence to a police officer's testimony, simply because he is a police officer, than to that of other witnesses. This matter was within the trial judge's discretion. See *Commonwealth* v. *Walker*, 370 Mass. 548, 572-573, cert. denied, 429 U.S. 943 (1976), post-conviction relief granted on other grounds sub nom. *Walker* v. *Butterworth*, 599 F.2d 1074 (1st Cir.), cert. denied, 444 U.S. 937 (1979). We perceive no respect in which the fact that the trial in the *Walker* case took place before the amendment of G. L. c. 234, § 28, by St. 1975, c. 335, would affect the extent of the discretion of the trial judge to determine whether the circumstances that a witness was a police officer might cause a jury to arrive at a decision based on extraneous issues.[4] *Commonwealth* v. *Cameron*, 385 Mass. 660, 667 (1982). Cf. *Commonwealth* v. *Nickerson*, 388 Mass. 246, 249 (1983). No showing, by affidavit or otherwise, was made to the judge of any special reason to doubt the veracity of any police officer.

3. The defendant also claims error in the admission of evidence that he and the victim had become addicted to the use of heroin. Even if this evidence tended to show Stephens' commission of a separate crime, it also had probative force in establishing the motive for committing the crime with which he was charged. *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973). *Commonwealth* v. *King*,

---

[4] The judge did ask the general question whether any juror had friends or relatives in law enforcement or in the police department and whether that would affect their "impartiality to decide the case based upon the evidence." As a matter of fact during trial, defense counsel, probably wisely, made no cross-examination of the only police officer who testified, and in her summation said, "I didn't have to ask him any questions. He . . . did his job." The only witnesses were the victim and this officer.

387 Mass. 464, 469-470 (1982). *Commonwealth* v. *Marcelli*, 14 Mass. App. Ct. 567, 569 (1982). As in *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979), the trial judge sought "to keep the trial focused on the specific . . . [crime] charged" and to avoid having the drug addiction by Stephens and the victim used inappropriately in evidence or in argument. The judge, by his firm instructions that counsels' openings and arguments were not evidence, dealt adequately with statements by the prosecutor in her closing argument to which defense counsel objected. See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 424 (1978).

For the foregoing reasons, the judgment is affirmed.

*So ordered.*

HALE, C.J., and CUTTER, J. (concurring in the result). We concur in the affirmance of the conviction. We feel, however, that this is an area in which the Supreme Judicial Court has been proceeding on a case by case basis to lay down standards for applying G. L. c. 234, § 28, second par., as amended through St. 1975, c. 335. This obviously does present special difficulty where it is contended that racial considerations "may cause a decision . . . to be made in whole or in part upon issues extraneous to the case." Since the *Sanders* case, 383 Mass. 641 (1981), and the *Hobbs* case, 385 Mass. 863 (1982), further guidance has not been given.[1]

The trial judge in the present case, of course, could have avoided some controversy by following the recommendation in the *Lumley* case, 367 Mass. 213, 216-217 (1975). He did not do so but gave no extended statement of the grounds of his action. He reasonably could have felt that this was a case (if facts supporting a conviction should be found by the

---

[1] In the *Sowers* case, 388 Mass. 207, 210-213 (1983), involving interracial rape, the trial judge in fact did make individual inquiry of the members of the venire.

jury[2]) where jurors, whatever their racial background, would be unsympathetic to the defendant because of the facts and that juror revulsion would not be increased by the races of the participants in the criminal events. The judge may have appraised the situation as one where separate inquiries of individual jurors might infect with bias a case where possible racial prejudice would not be significant. His general inquiry of the panel was plainly designed to raise the matter of racial bias for each juror's conscientious consideration without laying such emphasis upon it as to produce any undesired and unfortunate reaction.[3] To the extent that the trial judge still possesses discretion in these matters, the authors of this separate opinion think that he did not abuse it and probably acted sensibly. In any event (at least until further guidance from the Supreme Judicial Court), we think that this court should not prescribe for the future a mandatory course and practice which would diminish the traditional range of discretion of trial judges in the conduct of trials.

---

[2] Four black jurors were in fact seated, two of whom were removed by the Commonwealth by peremptory challenge. One of these was challenged by the Commonwealth because she seemed nervous and "uncomfortable in the role of being a juror." The record does not show the reasons for the Commonwealth's challenge of the other black juror. Two black jurors were not the subject of peremptory challenges by the Commonwealth, and participated.

[3] The transcript indicates to us that at trial racial issues in fact were not emphasized improperly before the jury. The prosecutor in her conduct of the case, and defense counsel in her defense of Stephens before the jury, were careful to avoid introduction of racial considerations. The judge made a diligent effort to confine the evidence to issues really presented. In her summation, however, defense counsel herself made reference to race by saying to the jury, "I know that you will decide this case fairly and impartially and on the evidence. I know that race will not be an issue in this case, and that there will not be any questions of bias or prejudice coming up among you."