COMMONWEALTH *vs.* RAFAEL RAMIREZ.

Essex. January 9, 1990. - June 7, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Examination of jurors, Fair trial, Instructions to jury. *Jury and Jurors. Firearms.*

The judge in a case involving a Hispanic male defendant and a white female victim in a crime of violence did not err in conducting a voir dire of prospective jurors on the subject of racial or ethnic prejudice without first conducting on his own initiative a colloquy with the defendant to ensure that he had knowingly and voluntarily participated in counsel's decision to request the individual examination of potential jurors concerning their possible bias against Hispanic people. [554-557]

This court concluded that henceforth a judge in a case involving an interracial crime of violence will not be required, prior to examining prospective jurors for racial or ethnic bias, to conduct a colloquy with a defendant personally to ensure that he had knowingly and voluntarily participated in his counsel's decision to request the individual examination of prospective jurors on the subject of racial prejudice. [554-557]

At a criminal trial, the judge's instructions to the jury on the crime of carrying a firearm without a license were not made prejudicially incomplete by his failure to mention a certain exemption from normal licensing requirements the holder of a firearm identification card would have, where there was no evidence that the defendant possessed a firearm identification card. [557-558]

COMPLAINTS received and sworn to in the Lynn Division of the District Court Department on April 21, 1987.

On appeal to the jury session of the Salem Division, the cases were tried before *Mario Umana*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Richard Zorza*, Committee for Public Counsel Services, for the defendant.

*S. Jane Haggerty*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. After a jury trial, the defendant was convicted of assault with a dangerous weapon, larceny from the person, receiving stolen property, and carrying a firearm without a license. The charges arose out of an incident involving the defendant, who is Hispanic, and his former girl friend, who is not Hispanic and is white. Prior to empanelment of the jury, defense counsel requested individual voir dire of the venire on several matters including bias against Hispanic persons. Without conducting a colloquy with the defendant personally, the judge asked each juror the following requested questions (with occasional inconsequential variation): "The defendant in this case is Hispanic. Are you aware of any feeling of bias or prejudice based on race which might interfere with your ability to decide the case impartially? . . . This case also involves weighing the credibility of white witnesses against the credibility of Hispanic witnesses. Do you think you could remain impartial with respect to that?"

The defendant argues on appeal that the judge erred in failing on his own initiative to conduct a colloquy with him personally before conducting the voir dire. The purpose of the inquiry, he asserts, would be to ensure that he had knowingly and voluntarily participated in counsel's decision to request the individual examination of potential jurors concerning their possible bias against Hispanic people. We granted the Commonwealth's application for direct appellate review and now affirm the convictions.

We first suggested in *Commonwealth* v. *Lumley*, 367 Mass. 213 (1975), that, in circumstances like those present here, a colloquy should take place between a defendant personally and the trial judge. In *Lumley*, we reaffirmed the holding of *Commonwealth* v. *Ross*, 363 Mass. 665, cert. denied, 414 U.S. 1080 (1973), that questions to potential jurors about racial prejudice "are constitutionally mandated only when the defendant [is] a 'special target for racial prejudice,'" *Lumley*, *supra* at 214, quoting *Ross*, *supra* at

672, a situation not present here. Nonetheless, we said that a motion to have jurors asked about racial prejudice should usually be granted, *Lumley, supra* at 216, and we said further, *id.* at 216-217: "Such a motion, raising as it does difficult issues of jury psychology and potential injury to the defendant's case, should come from the defendant himself. Before granting the motion, the trial judge should carefully ascertain that the defendant's decision to insist on specific questions regarding racial bias was a knowing and voluntary one, made with an understanding that such specific questions may activate latent racial bias in certain prospective jurors or may insult others without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice. If, thereafter, the defendant insists that specific questions concerning bias be asked, the judge should propound such questions to the veniremen. The decision then has been the defendant's to make." (Footnote omitted.)

In *Commonwealth* v. *Sanders*, 383 Mass. 637, 641 (1981), we repeated in dicta those "cautionary remarks" made in *Lumley, supra.* Then, in *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. 215, 223-225 (1985), we announced that a judge's failure to conduct the cautionary colloquy could be reversible error although we did not hold that reversible error had occurred in that case. *A Juvenile (No. 2)* was followed by three cases in which we reiterated the colloquy principle, *Commonwealth* v. *Rivera*, 397 Mass. 244, 251 (1986), *Commonwealth* v. *Young*, 401 Mass. 390, 398 n.8 (1987), and *Commonwealth* v. *Washington*, 402 Mass. 769, 772-774 (1988). In *Washington, supra* at 774, we held that the failure to conduct the colloquy was reversible error.

On further reflection, we are no longer convinced that a judge should be required to conduct such a colloquy. Our research has disclosed no other State in which the trial judge is required to do so. Also, although a decision to request a voir dire concerning juror racial or ethnic bias undoubtedly raises difficult issues of jury psychology with a potential for counter-productivity, that decision is only one of numerous tactical decisions with a similar potential that the defense

may have to make. In no other instance not involving a waiver of constitutional rights, as here, see *Commonwealth* v. *A Juvenile (No. 2)*, *supra* at 224, have we imposed a requirement of dialogue between the judge and the defendant personally. Indeed, not only does a decision *to* request a voir dire present a potential of harm to the defendant, but also a decision *not* to request a voir dire runs a risk that the jury will include bigots, but we do not require the trial judge to inquire of the defendant personally concerning his or her involvement in the tactical decision not to request a voir dire. See *Commonwealth* v. *Guess*, 23 Mass. App. Ct. 208, 212 (1986).

A criminal defendant must decide whether to testify, as is the defendant's constitutional right, or not to testify, which is also a constitutional right. *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. 384, 386 (1987). Clearly, that tactical decision may have immense consequences for the defendant. Nevertheless, there is no requirement in this Commonwealth that the trial judge engage in a colloquy with the defendant personally about the defendant's participation in the decision whether to testify. *Id.* at 388-390.

Moreover, we have held that "it will be reversible error if a judge instructs the jury concerning a defendant's right not to testify when the defendant has requested that no such instruction be given." *Commonwealth* v. *Buiel*, 391 Mass. 744, 746 (1984). In that case, we recognized that a judge's instruction to the jury concerning the respect the jury should have for the defendant's unfettered right not to testify may instead have the unintended and prejudicial effect of "focus[ing] the jury's attention on the question why the defendant decided not to assist the jury in their fact-finding function." *Id.* at 747. Even so, we have not imposed an obligation on trial judges to engage in colloquies with defendants personally to be sure they appreciate the competing risks involved in determining whether to request an instruction about a defendant's right not to testify. Indeed, we said in *Buiel* that, "[i]f there are multiple defendants, under Federal constitutional requirements the judge will have to give the

instruction as to any defendant who requests it (see *Carter* v. *Kentucky*, 450 U.S. 288 [1981]), and should consult with counsel for any other defendant who objects to such a charge to see whether he really wishes reference to his client to be omitted from the charge which will have to be given on this subject." *Id*. at 747 n.3. We recommended that the judge consult with other defense counsel, not with other defendants personally.

We have required on-the-spot colloquy in cases involving a defendant's waiver of constitutional rights. See, e.g., *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509-510 (1979) (waiver of right to jury trial); *Commonwealth* v. *Davis*, 376 Mass. 777, 784-785 (1978) (waiver of right to a conflict-free attorney); *Commonwealth* v. *Foster*, 368 Mass. 100 (1975) (waiver of rights involved in a plea of guilty). However, in conducting a colloquy to be sure that a defendant's waiver of such a right is truly voluntary, a judge runs little risk that, if he or she influences the defendant to reconsider counsel's advice, the judge may have done more harm than good. The minimal risk of harm to a defendant who, as a result of the colloquy, decides not to waive a jury or not to proceed with an attorney with a possible conflict of interest or not to plead guilty is fully justified by the importance of protecting the defendant's constitutional rights. However, in conducting a colloquy to be sure that an informed defendant agrees with his or her attorney's assessment that a voir dire of prospective jurors concerning racial or ethnic bias would be advisable, the judge does not protect a constitutional right and runs the risk, as a result of his or her advice, that the unexamined jury will include racially or ethnically biased members. The benefit to be obtained by a colloquy does not justify the risk of harm. Thus, we have concluded that there was no error in this case, and that henceforth judges will not be required to conduct a colloquy with defendants personally before examining prospective jurors for racial or ethnic bias.

We now briefly turn to a second and quite different issue that the defendant raises on appeal. The defendant argues that the judge's jury instructions on the crime of carrying a

firearm (G. L. c. 269, § 10 [*a*] [1988 ed.]), were prejudicially incomplete. " '[C]arrying' a firearm occurs when the defendant knowingly has more than momentary possession of a working firearm and moves it from one place to another." *Commonwealth* v. *Seay*, 376 Mass. 735, 737 (1978). "To lawfully 'carry' a firearm within the Commonwealth . . . a person must either obtain a license to do so under G. L. c. 140, § 131, or be exempt from the normal licensing requirements under G. L. c. 140, §§ 129C, 131F, or 131G . . . ." *Id.* at 739. There is one other exemption. A person who obtains a "firearm identification card" under G. L. c. 140, § 129B (1988 ed.), allowing him or her to possess a firearm legally, may carry a firearm within his or her residence or place of business without violating the law. *Id.* at 740-742. The defendant requested the judge to instruct the jury that, to constitute a crime, the "unlicensed carrying must take place outside of one's residence or place of business." The judge, however, only instructed the jury that proof of the crime requires proof of. the unlicensed moving of a working firearm from one place to another. He said nothing about the exemption that the holder of a firearm identification card would have.

There was no error. Even if the jury's verdict could have been based on evidence that the defendant moved a firearm only within his residence, as the defendant contends, there was no evidence that the defendant possessed a firearm identification card. The burden to produce such evidence was on the defendant, *Commonwealth* v. *Dunphy*, 377 Mass. 453, 460 (1979), *Commonwealth* v. *Seay*, *supra* at 738, and he did not meet it.

*Judgments affirmed.*