Edward LOVE, Applicant–Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 94–943.

Court of Appeals of Iowa.

Nov. 27, 1995.

Duane E. Hoffmeyer of Vakulskas and Hoffmeyer, P.C., Sioux City, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Mark A. Campbell, Assistant County Attorney, for appellee.

Heard by SACKETT, P.J., CADY, J., and OXBERGER, S.J.*

CADY, Judge.

Edward Love appeals a district court's order denying his application for postconviction relief. He claims the district court erred in failing to grant relief based on ineffective assistance of counsel. We affirm.

Love was convicted in 1987 of first-degree kidnapping and third-degree sexual abuse. He claimed at trial he had consensual sex with the victim and did not cause the injuries sustained by the victim. He produced witnesses at the trial who testified Love and the victim were together at a bar earlier in the evening of the incident, and acted very affectionate toward each other.

The conviction was affirmed on appeal. We concluded substantial evidence supported the conviction and the trial court did not abuse its discretion in refusing to allow Love to introduce evidence about the victim's alleged abusive relationship with her husband.

Love subsequently filed this application for postconviction relief. He claims his trial counsel rendered ineffective assistance of counsel by failing to file pretrial motions for discovery of documents and exculpatory evidence, to suppress Love's statements made before *Miranda* warnings were given, to suppress the victim's identification of him at a show-up, and to suppress clothing taken from him at the police station after the arrest. Love also claims his trial counsel was ineffective for failing to object to a jury panel orientation instruction focusing on racial bias,[1] and in failing to properly advise him of the deficiencies in his theory of defense. The postconviction court found trial counsel was not ineffective and denied the application.

---

\* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Supreme Court.

1. The jury orientation instruction explained: "I now want to draw your attention to the fact that Edward Love is a black man. The alleged victim of the offense charged is a white woman. I bring these facts regarding differences in race to your attention now for the purpose of telling you that any prejudice that may exist based upon the race of Edward Love or of the alleged victim has no place in this courtroom nor in the trial of this case. Racial difference and racial issues have no part in any criminal trial. In our system of justice, every person is entitled to equal protection and treatment under the law. Every person who is charged in a criminal case, whether he be black or white, rich or poor, comes into court surrounded by a presumption of innocence that stays with him throughout the trial until such time, if ever, the State proves beyond a reasonable doubt that the Defendant is, in fact, guilty of the crime charged. Whether the state can prove guilt beyond a reasonable doubt is determined solely from the evidence in this case and the instructions given to you by the Court and not from any external fact such as race, creed, national origin or any other fact which has no relationship to whether the Defendant did or did not commit the crime charged."

"Both the State of Iowa and Edward Love are entitled to a fair trial which means the case has to be decided only on the evidence presented at the trial and the instructions of the Court, without bias or sympathy for or against either the State or Edward Love. You will soon be called forward to the jury box to answer questions to determine your qualifications to serve as a juror. If you are called forward, please remember the oath you have taken to give true and complete answers to the questions posed to you. You should not be offended by such questions, for each party has the right to ask them to discover any beliefs or opinions which may influence your deliberations. If, in fact, you could not be a fair and impartial juror because of some bias or prejudice or for any other reason, then you should not be embarrassed to admit such bias and you owe it to the parties here, to our judicial system, and to yourself to have the courage and honesty to say so, even if not asked. The right to have a fair and impartial trial is a right that must be protected by all of us. Your truthful answers will help maintain that right. The attorneys may ask many questions or a few questions. You should not give any particular weight or significance to the number of questions asked of you."

## I. Scope of Review and Standard for Recovery

■ We ordinarily review postconviction relief proceedings for errors at law. *Hinkle v. State,* 290 N.W.2d 28, 30 (Iowa 1980). When a postconviction applicant asserts a violation of constitutional safeguards, however, we make our own evaluation based on the totality of the circumstances. *Id.* This is akin to a de novo review. *Id.* Since the claim in this case is based on ineffective assistance of counsel, we review de novo.

■ To prevail on a claim of ineffective assistance of counsel, the applicant must show by a preponderance of the evidence counsel failed to perform an essential duty and prejudice resulted. *See State v. Risdal,* 404 N.W.2d 130, 131 (Iowa 1987). In evaluating the performance of counsel, we begin with a presumption that counsel acted competently. *See Risdal,* 404 N.W.2d at 131.

## II. Pretrial Preparation

■ Love first contends his trial counsel should have sought to suppress the evidence concerning the results of a show-up identification, the statements he made to police after his arrest, and the clothing he was wearing at the time of his arrest. An attorney is not ineffective for failing to seek the suppression of admissible evidence. *See Kellogg v. State,* 288 N.W.2d 561, 565 (Iowa 1980). We have examined each claim of suppression and conclude the evidence was admissible. Moreover, no prejudice was visited upon Love due to the failure of his attorney to file a suppression motion.

■ Love next claims his trial attorney rendered ineffective assistance by failing to file motions for the production of documents and for exculpatory evidence. There is no dispute in this case that the State voluntarily produced its entire file to defense counsel prior to trial. Discovery motions are not required when the entire prosecutorial file is made available to the defense. *See Fryer v. State,* 325 N.W.2d 400, 413 (Iowa 1982). Moreover, the State has an independent obligation to produce exculpatory evidence. *See* Iowa Code of Professional Responsibility DR–7–103(B). Trial counsel was not ineffective for failing to seek discovery.

Love also argues trial counsel was ineffective for providing inadequate plea advise in view of the problems with his theory of defense. We find the letter written to Love by trial counsel prior to trial adequately alerted Love to the problems with his defense, and alternatives to trial. We find trial counsel did not render ineffective assistance in advising Love.

## III. Pre–Voir Dire Instruction on Racial Bias

Love's final claim of ineffective assistance is based on the failure of counsel to object to the trial court's orientation instruction targeting racial bias. We find the resolution of this sensitive issue comes down to a tactical or strategical decision, and trial counsel in this case did not act outside the scope of competency in failing to object to the trial court's admonition.

In *State v. Windsor,* 316 N.W.2d 684, 686–87 (Iowa 1982), our supreme court, following the lead of the United States Supreme Court, held trial courts should make, or permit counsel to make, specific inquiry into racial prejudice when properly requested in cases involving a defendant accused of a violent crime against a person of a different race, as well as any case in which there is a reasonable possibility the verdict might be affected by racial prejudice. Any effort to uncover racist attitudes within a justice system, however, can be complicated by further issues of jury psychology and potential injury to a defendant's case. *Commonwealth v. Lumley,* 367 Mass. 213, 216–17, 327 N.E.2d 683, 686 (1975). Questions directed to a jury panel about racial prejudice "may activate latent racial bias in certain prospective jurors or may insult others without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice." *Id.* at 217, 327 N.E.2d at 686. For these reasons, the issue may best be left untouched, or confronted by other means. In any event, the dangerous undercurrent makes it clear the issue of racial bias should only be raised with the consent of the defendant. *Id.*

In this case, the trial record reveals Love's counsel did not request the orientation instruction but also did not lodge an objection to it when given an opportunity by the trial court prior to the time the instruction was given. We will not second guess trial counsel's decision to raise the issue of racial bias or to permit the court to raise the issue. *See Karasek v. State,* 310 N.W.2d 190, 192 (Iowa 1981). We understand the potential draw backs, but the decision to pursue the issue does not lie outside the scope of normal competency. *See State v. Newman,* 326 N.W.2d 788, 795 (Iowa 1982). No clear right or wrong approach to handling the issue of racial bias exists and even the need for courts and lawyers to consider this issue can be as troubling as the issue itself. It can project disturbing overtones when injected into the trial proceedings due to the subtle impression that justice in a court of law in this country may turn upon skin color. *See Rosales–Lopez v. United States,* 451 U.S. 182, 190, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22, 30 (1981). In a better world, racism would be a specter of the past, or, better yet, nonexistant. We, however, like trial counsel, must deal with reality, and face the real problems presented. Trial counsel was not ineffective for failing to object to the trial court's instruction on racism.

Love further argues his trial counsel rendered ineffective assistance for consenting to the racial bias instruction without first obtaining his input and consent. Love did not raise this issue with the postconviction court, and, consequently, it has not been preserved for us on appeal. *See State v. Hansen,* 286 N.W.2d 163, 165–66 (Iowa 1979). Notwithstanding, we recognize defendants should be advised and consulted prior to the submission of an instruction to the jury panel concerning racial bias.[2] The record in this case supports a finding that Love and his attorney generally discussed the issue of raising racial bias during jury selection, and Love acquiesced in the strategy pursued by his attorney. The instruction by the trial court was compatible with the jury selection strategy ultimately followed by his attorney.

**AFFIRMED.**

---

**2.** We do not suggest trial courts are required to conduct a colloquy with a defendant prior to giving a pre-voir dire charge on racial bias. *See Commonwealth v. Ramirez,* 407 Mass. 553, 555 N.E.2d 208 (Mass.1990).