COMMONWEALTH *vs.* A JUVENILE (No. 2).

Suffolk.   September 12, 1985. — November 13, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Criminal,* Instructions to jury, Presumptions and burden of proof, Examination of jurors. *Error,* Harmless.

At the trial of a criminal case, the judge's instructions to the jury with respect to the meaning of reasonable doubt were constitutionally adequate despite the inclusion of a phrase, in the midst of the otherwise thorough and accurate explication of the requisite standard of proof, that the proof required to sustain a conviction "is not proof beyond all reasonable doubt." [217-220]

Although the judge in a case involving an interracial crime of violence erred in examining prospective jurors on the subject of racial prejudice without first conducting sua sponte a colloquy with the defendant to ensure that his pretrial motion requesting such questioning was made voluntarily and with an understanding of the possible risks and potential dangers of this type of voir dire, reversal of the defendant's conviction was not required in the absence of a showing that the defendant was prejudiced by the error. [220-225]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on February 2, 1984.

On appeal to the Boston Division of the Juvenile Court Department, the case was tried before *Paul D. Lewis,* J.

The Supreme Judicial Court transferred the case from the Appeals Court on its own initiative.

*Andrew Silverman,* Committee for Public Counsel Services, for the defendant.

*David B. Mark,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. The defendant, a black juvenile, after a bench trial in the juvenile session of the Dorchester District Court, was found delinquent by reason of having committed armed

robbery. He appealed to the Boston Juvenile Court, Appellate Division, for a trial de novo under G. L. c. 119, § 56 (1984 ed.). After trial before a jury of twelve, the defendant again was adjudicated delinquent and was committed to the custody of the Department of Youth Services. He appealed, and we transferred the case to this court on our own motion.

The defendant argues that the judge's instructions to the jury on the meaning of reasonable doubt were constitutionally infirm, requiring reversal. He also claims that it was reversible error for the trial judge to examine prospective jurors on the subject of racial prejudice without first conducting a colloquy with him to ensure that the request for such questioning was made voluntarily and with an understanding of the possible adverse consequences that might result. We affirm.

We summarize the evidence. At approximately 2:25 P.M. on February 1, 1984, Mary Hixon, a teacher at the Lucy Stone School in Dorchester, was walking through the school yard on the way to her automobile with a fellow teacher, Patricia Mac-Lellan, when they were joined by a youth in a brown, or light brown, jacket. Hixon looked at the youth several times thinking he might have been a former student, but she did not recognize him. When the three reached Hixon's automobile, a 1984 Buick LeSabre, the youth demanded the keys. Hixon refused to surrender them, and the youth grabbed the keys from her hand. When Hixon demanded that he return the keys, the youth produced a handgun and threatened to shoot her. The youth then got into the automobile and drove out of the school yard. The two teachers then went to the school principal's office, and the police were called.

Later that day, about 2:40 P.M., Officer Ronald Smith of the Boston police department and his partner, Officer Frank Walsh, were on plainclothes duty in an unmarked automobile on Tebroc Street in Dorchester, seven or eight blocks from the school. Smith saw a 1984 black Buick automobile travelling slowly in front of him; its license plate number matched that of an automobile reported stolen. The Buick came to a stop, and the driver, whom Smith identified at trial as the defendant, alighted and began to run. The officers pursued the defendant

on foot through a vacant lot and several backyards and then lost sight of him. Other officers apprehended the defendant shortly thereafter. He was taken to the Lucy Stone School in a police wagon. He was wearing a tan, or beige, jacket when taken into custody.

At the school, Officer Smith asked Hixon and MacLellan to view three suspects. The women first looked at two youths seated in an automobile in the school yard, but neither Hixon nor MacLellan made an identification. They then viewed the defendant in the back of the police wagon, and, after asking that he step out of the wagon so they might see him better, both made positive identifications.[1] Officers Smith and Walsh then returned to Tebroc Street where they retraced the defendant's path of flight and recovered a key ring identified by Hixon as belonging to her. It contained keys to her house and automobile. No gun was ever found.

The defendant testified that he was walking home the afternoon of February 1, 1984, when an automobile pulled up beside him. In the unmarked vehicle were two men. One of the men told him to "come here." At that time, the defendant did not know the man whom he indicated in court was Officer Smith. Although the defendant recognized the other man in the vehicle, Frank Walsh, as a police officer, he ran when Officer Smith got out of the automobile. He testified that he did so because he did not know who Smith was and did not want to be picked up. The defendant denied committing the robbery and maintained that he was mistakenly identified.

1. *Jury instructions.* The defendant argues that he was denied due process of law when the trial judge instructed the jury that the proof required to sustain a conviction "is not proof beyond all reasonable doubt."[2] This is an obvious misstatement

---

[1] Hixon and MacLellan also identified the juvenile in Dorchester District Court two weeks after his arrest and again some months later at trial.

[2] The judge gave the following charge on reasonable doubt:

"The Defendant is not required to do anything to prove his innocence. He has the right not to testify. The burden is upon the Commonwealth to prove beyond a reasonable doubt, that the Defendant is guilty of the charges made against him.

"I am going to read to you language which was approved by our Supreme

of the Commonwealth's burden of proof. However, we have emphasized repeatedly that "to determine whether a definition

Judicial Court, since this standard of 'beyond a reasonable doubt' or 'proof beyond a reasonable doubt' is so critical and because I understand that the following language, which I will read to you is difficult, I am going to ask you to pay special attention to it.

"'Proof beyond a reasonable doubt does not mean proof beyond all doubt, nor proof beyond a whimsical or fanciful doubt, nor proof beyond the possibility of innocence.

"'A reasonable doubt does not mean such doubt as may exist in the mind of a man who is earnestly seeking for doubts or for an excuse to acquit a Defendant; but it means such doubt as remains in the mind of a reasonable man who is earnestly seeking the truth.

"'A fact is proved beyond a reasonable doubt when it is proved to a moral certainty as distinguished from an absolute or mathematical certainty, the kind of certainty when you add two and two and get four.

"'When it is proved to a degree of certainty that satisfies the judgment and the consciences of the jury as reasonable men and women and leaves in their minds a clear and settled conviction of guilt; but if when all is said and done, there remains in the jury any reasonable doubt of the existence of any fact, which is essential to the guilt of the Defendant, the Defendant must have the benefit.

"'*It is not proof beyond all reasonable doubt,* all imaginary doubt; but such proof as precludes every reasonable hypothesis except that which it tends to support. It is proof to a moral certainty as distinguished from an absolute certainty. It signifies such proof as satisfies the judgment and the consciences of the jury as reasonable people in applying reason to the evidence before them that the crime charged has been committed by the Defendant and so leaves them with no other reasonable conclusion possible.

"'The jury must be satisfied to a reasonable and moral certainty that the Defendant committed the crimes for which he is charged. It is not enough to establish a probability that the fact charged is more likely to be true than not true.

"'The evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces and directs the judgment and satisfies the understanding and the reason of those who are bound to act conscientiously upon it.'" (Emphasis added.)

This instruction is a nearly verbatim recitation of Model Jury Instruction 2.051 which appears in the ninth annual revision of the Model Jury Instructions for Criminal Offenses Tried in the District Courts. The language was taken from this court's opinion in *Commonwealth* v. *Little,* 384 Mass. 262, 266 n.4, 266-267 (1981), in which we stated that "the charge faithfully tracks the language of *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850)." The emphasized phrase, about which the defendant complains in the instant

of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole." *Commonwealth* v. *Smith,* 381 Mass. 141, 145 (1980). See *Commonwealth* v. *Beverly,* 389 Mass. 866, 870 (1983); *Commonwealth* v. *Wood,* 380 Mass. 545, 548 (1980). Thus, it is not our practice to "dissect a charge to determine if each part is constitutionally adequate." *Commonwealth* v. *Garcia,* 379 Mass. 422, 439, 441 n.12 (1980). Rather we look to the instructions in their entirety and assess the probable impact they had on the jurors. *Id.*

In the present case the jury were instructed at some length, and in language approved by this court, see note 2, *supra,* on the meaning of reasonable doubt and the Commonwealth's burden of proof. Before the phrase complained of was spoken, the judge had informed the jurors that "[t]he burden is upon the Commonwealth to prove beyond a reasonable doubt, that the Defendant is guilty of the charges made against him." Immediately preceding the offensive language, he stated as well that "if when all is said and done, there remains in the jury any reasonable doubt of the existence of any fact, which is essential to the guilt of the Defendant, the Defendant must have the benefit." Moreover, the challenged phrase was followed by corrective language. For example, in the same sentence in which the misstatement appeared the judge stated that the proof required to convict is that which "precludes every reasonable hypothesis except that which it tends to support." He then instructed the jury that it "must be satisfied to a reasonable and moral certainty" of the defendant's guilt.

Viewing the charge as a whole, we conclude that the isolated utterance of the phrase at issue, although regrettable, did not vitiate the adequacy of the reasonable doubt instructions.[3] The

case, appeared in the charge in *Little* as well, but was not objected to on that occasion, and we did not pass on its propriety.

[3] Our conclusion that the charge delivered in the instant case was constitutionally sufficient obviates any harmless error inquiry. Although the author of this opinion has taken the position that an erroneous charge on reasonable doubt cannot constitute harmless error, *Commonwealth* v. *Garcia, supra* at 445 (Liacos, J., dissenting), the determination as to whether a charge is erroneous in the first instance must be made on the basis of the charge as

flawed portion of the charge was in the midst of an otherwise thorough and accurate explication of the requisite standard of proof, thus minimizing any fleeting misimpressions that it might have engendered. The jury could have come to no other conclusion but that it was their duty to acquit the defendant if, after hearing all the evidence, they retained a reasonable doubt as to his guilt.[4] See *Reddick* v. *Commonwealth,* 381 Mass. 398, 406 (1980) (trial judge's isolated use of language criticized in our prior decisions did not invalidate otherwise correct instructions on burden of proof); *Commonwealth* v. *Medina,* 380 Mass. 565, 578 (1980) (no error in judge's charge on "malice" despite isolated use of improper language where accurate instructions appeared in the same sentence and the correct standard was repeatedly mentioned). Cf. *Commonwealth* v. *Pickles,* 393 Mass. 775, 778-779 (1985) (judge's charge was reversible error where, after two statements placing the burden of proof on the Commonwealth, the judge placed it entirely on the defendant and there was no corrective language later in the charge); *Commonwealth* v. *Wood, supra* (judge's charge was reversible error where it placed the burden of proof beyond a reasonable doubt simultaneously and with equal emphasis upon the Commonwealth and the defendant; "[t]his is not a case where the flawed portions of the charge represent 'isolated inadequacies' corrected by a proper 'emphasis [on] the necessity of moral certainty of guilt,'" quoting *Commonwealth* v. *Williams,* 378 Mass. 217, 233 [1979]).

2. *Colloquy.* In a pretrial motion, the defendant requested that eight specific questions be asked on voir dire and moved to have the prospective jurors examined individually. Three of the requested questions were directed toward revealing racial

---

a whole and not on an examination of an excised or isolated portion of it. See *Commonwealth* v. *Kelleher,* 395 Mass. 821, 828 (1985) (Liacos, J., concurring).

[4] In light of today's decision, trial judges should be advised when giving the District Court's model jury instruction on reasonable doubt to delete the language complained of in this case even though we hold that it is not fatal to the instructions as a whole. In the alternative, the judge may rephrase the objectionable clause to read: "It is not proof beyond all doubt . . .," deleting the adjective "reasonable."

bias in the members of the venire. The defendant's counsel
indicated in a hearing on the motion that the questions were
advisable because the case involved an interracial crime of
violence.[5] The judge agreed to ask one of the three race-related
questions: "Have you had any experience with black persons
that might in any way affect your ability to act fairly and
impartially in this case?"[6] On the basis of their responses to
this question, one black and three white prospective jurors
were excused for cause.[7]

The defendant contends on appeal that the judge committed
reversible error by failing to inquire of the defendant whether
his decision to request race-related voir dire questions was
made voluntarily and with knowledge that such questioning
may damage the defendant's case. He relies principally in this
regard on our decision in *Commonwealth* v. *Sanders*, 383
Mass. 637 (1981).

In *Sanders, supra* at 640-641, we held that G. L. c. 234,
§ 28 (1984 ed.), requires that in interracial rape cases the trial
judge must grant a defendant's request for individualized ques-
tioning of prospective jurors as to racial bias. We reasoned
that our prior decisions had given insufficient force to the
second paragraph of § 28, which provides that, when it appears
to the trial judge that prospective jurors may be affected by
an extraneous issue such as racial prejudice, he must examine
the jurors individually on the matter. Noting that "interracial
rape may be 'a classic catalyst of racial prejudice,'" quoting
*Dukes* v. *Waitkevitch*, 536 F.2d 469, 471 (1st Cir.), cert.
denied, 429 U.S. 932 (1976), we concluded that in the future
it should be held as matter of law that "interracial rape cases
present a substantial risk that extraneous issues will influence

---

[5] Both the victim, Hixon, and the colleague who was with her at the time
of the robbery, MacLellan, are white. The defendant, as noted, is black.

[6] The judge rephrased the question when addressing it to black members
of the venire to read, "Have you had any experience with *white* persons
*that might in any way affect your ability to act fairly and impartially in this
case?*" (Emphasis added.)

[7] The jury that decided the case was composed of ten whites and two
blacks.

the jury and hence are within § 28, second par."[8] In so holding, the court stated:

"We stand by the cautionary remarks in *Commonwealth v. Lumley,* 367 Mass. 213, 216-217 (1975):[9] The motion for interrogation of prospective jurors as to racial prejudice 'should come from the defendant himself. Before granting the motion, the trial judge should carefully ascertain that the defendant's decision to insist on specific questions regarding racial bias was a knowing and voluntary one, made with an understanding that such specific questions may activate latent racial bias in certain prospective jurors or may insult others without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice.'" *Id.* at 641.

The rationale for requiring a colloquy between the judge and the accused prior to race-related, individual questioning of prospective jurors is that such questioning raises "difficult

---

[8] In *Commonwealth* v. *Hobbs,* 385 Mass. 863, 873 (1982), we held that in future trials involving interracial sexual offenses against children, the procedure outlined in *Sanders* — individual race-related questioning of prospective jurors pursuant to G. L. c. 234, § 28, second par. — must be applied. In the present case, because the trial judge examined the jurors individually as to possible racial bias, we need not determine whether interracial armed robbery is likely to inflame racial prejudice to such a degree as to mandate such questioning under G. L. c. 234, § 28. We assume, instead, that the trial judge was acting within his discretion, for ordinarily it is for the judge to determine under § 28, second par., whether a problem of extraneous influence is presented. *Commonwealth* v. *Hobbs, supra.*

[9] In *Lumley* the court reaffirmed its holding in *Commonwealth* v. *Ross,* 363 Mass. 665, cert. denied, 414 U.S. 1080 (1973), that voir dire questions designed to discover possible racial prejudice are constitutionally mandated only when the defendant is a "special target" for racial bias. We stated that "[i]n the ordinary case, inquiries beyond the statutory questions, which raise generally the issue of bias, rest in the sound discretion of the trial judge." *Lumley, supra* at 216. We emphasized, however, that "as a practical matter" the trial judge should ask race-related voir dire questions when so requested. *Id.*

issues of jury psychology and potential injury to the defendant's case" of which the defendant should be apprised. *Commonwealth* v. *Lumley, supra* at 216-217. As we noted in *Commonwealth* v. *Bumpus,* 365 Mass. 66, 67 (1974), specific questioning as to possible racial prejudice among the veniremen may "be counter-productive and serve to inject racial bias into the trial rather than to remove it." Therefore, while recognizing that it is the defense counsel who initiates the request for such questioning in most cases, based on a tactical assessment of the value to be derived therefrom, we believe that the decision whether to raise the racial bias issue with prospective jurors should rest ultimately with a fully informed defendant.

The Commonwealth argues that the obligation to hold a *Sanders*-type colloquy is contingent on a specific request by defense counsel. We do not agree. Given the importance we have placed on the accused's decision to request race-related questioning of prospective jurors in *Lumley* and *Sanders,* see also *Commonwealth* v. *Pope,* 392 Mass. 493, 504 n.14 (1984), we think that before granting a motion for such questioning the trial judge must determine sua sponte that the defendant has been informed of, and understands, the risks and potential dangers of this type of voir dire.[10] Thus, a valid request for individualized interrogation under *Sanders* imposes, by itself, a duty on the trial judge to engage in a colloquy with the defendant. The defendant need not request such a colloquy or object to the judge's failure to hold one to preserve the defendant's rights on appeal. To hold otherwise would be somewhat illogical. If defense counsel were required to request a colloquy, his failure to do so would bind the defendant, thereby defeating the purpose for requiring a colloquy in the first place.

---

[10] We adopted a similar approach in *Commonwealth* v. *Davis,* 376 Mass. 777, 784-785 (1978), in which we imposed an affirmative duty upon trial judges to assure that jointly represented criminal defendants are "adequately informed of the risks and potential dangers of joint representation and that each acknowledges an understanding of this information." As in *Davis,* we will not attempt in the instant case to define the exact form and procedure the required colloquy should take, preferring to leave that matter to the sound discretion of the trial judge. We note, however, that the examination should be preserved on record so that it may be reviewed on appeal.

In such cases, the record would be devoid of any indication that the defendant knowingly and voluntarily acquiesced in the decision to request race-related questioning, yet the defendant would be precluded effectively from raising the issue on appeal. In the present case, the trial judge erred in failing to conduct the requisite colloquy sua sponte.

We must determine whether that error is cause for reversal. Our ruling in *Sanders,* and consequently our reaffirmation of that decision today, are based "not on a constitutional mandate, but on the need for caution and certainty in the application of [G. L. c. 234,] § 28." *Commonwealth* v. *Hobbs,* 385 Mass. 863, 873 (1982). Therefore, we are dealing neither with a constitutional right so basic to a fair trial that its infraction can never be treated as harmless error, see, e.g., *Commonwealth* v. *Soares,* 377 Mass. 461, 492, cert. denied, 444 U.S. 881 (1979), nor a more commonplace constitutional error, requiring reversal unless the Commonwealth can show that it was harmless beyond a reasonable doubt. See *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 126 (1984). Although we have not explicated the basis of our ruling in *Sanders,* it seems clear that the imposition of a duty on a trial judge to make inquiry of the defendant is predicated on our inherent and statutory powers of superintendence of the lower courts. See G. L. c. 211, § 3 (1984 ed.). Ordinarily, the violation of such a principle or the deprivation of a statutory right is not grounds for reversal unless the defendant can demonstrate resulting prejudice. See *Commonwealth* v. *A Juvenile (No. 2),* 384 Mass. 390, 392 (1981). The defendant, therefore, must show that the error "possibly weakened his case in some significant way so as to require a' new trial." *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983). No such showing has been made.

The individualized questioning of prospective jurors as to racial prejudice apparently worked to the defendant's advantage. The jury which decided the case were not exclusively white, and three veniremen were excused for cause after indicating a possible inability to act fairly and impartially in the case because of the defendant's race. Of course, a guilty verdict was returned even though these veniremen were excused, but

this can be attributed to the overwhelming evidence of guilt presented, rather than to any animosity toward the defendant that might have been created by the race-related voir dire questioning. The only two witnesses to the armed robbery positively identified the defendant, as did a police officer who saw the youth driving the stolen automobile shortly after the criminal incident was reported. The defendant was wearing clothing when apprehended that matched the description given by the two witnesses of that worn by the offender. There was evidence of flight as well, and the victim's key ring was found along the path the defendant took when running from the police officers. Finally, the defendant's exculpatory testimony was uncorroborated. In short, this was not a case in which conflicting evidence rendered the outcome of jury deliberations uncertain. We therefore conclude that the trial judge's error in failing to conduct the required colloquy did not prejudice the defendant.

*Judgment affirmed.*