## Commonwealth *vs.* Tomas Rivera.

Hampden.   January 7, 1986. — April 7, 1986.

Present: Hennessey, C.J., Liacos, Abrams, Lynch, & O'Connor, JJ.

*Identification. Evidence,* Consciousness of guilt, Hearsay, Spontaneous utterance. *Jury and Jurors. Practice, Criminal,* Examination of jurors, Instructions to jury, Duplicitous convictions. *Kidnapping. Rape. Robbery. Error,* Harmless.

At trial of indictments for rape, kidnapping, and other serious crimes, in which the thrust of the defense was a challenge to the victim's identification of the defendant as her assailant, which was corroborated in the trial testimony, the judge did not err in admitting evidence that the victim, on her return home after the incident, and again on identifying the defendant no more than thirty minutes later, said that she would never forget her assailant's face, where the judge properly could have concluded that the first statement was a spontaneous exclamation, occurring while the declarant was in a state of hysteria, and that the second was a part of her out-of-court identification of the defendant. [247-249]

At a criminal trial the judge's instructions to the jury as to the dangers inherent in drawing an inference of guilt from the fact of the defendant's flight adequately dealt with the contention which the defendant sought to raise on appeal. [249-251]

Although, in the circumstances, it was error for the judge at a criminal trial to interrogate prospective jurors about possible racial prejudice without first conducting, on his own initiative, a personal colloquy with the defendant, reversal of the defendant's convictions on this ground was not required in light of the strength of the Commonwealth's case. [251-252]

The evidence at the trial of indictments for kidnapping, rape, and robbery was such that the defendant's kidnapping conviction was not necessarily based on the same act or incident that constituted either the rape or the robbery and that, therefore, separate convictions and punishments for the three offenses were appropriate. [252-254]

Indictments found and returned in the Superior Court Department on May 4, 1983.

The cases were tried before *William W. Simons,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas C. Federico,* Committee for Public Counsel Services, for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. A jury convicted the defendant on two indictments for aggravated rape of a child and on single indictments for kidnapping, indecent assault and battery, assault and battery by means of a dangerous weapon, and armed robbery. The defendant was sentenced to life imprisonment on one of the rape convictions[1] and to concurrent terms of life imprisonment on the armed robbery conviction, eight to ten years on the kidnapping and assault and battery with a dangerous weapon convictions, and three to five years on the conviction for indecent assault and battery. The defendant appeals and claims that the judge made the following errors: (1) admitting, over defendant's objection, certain hearsay testimony which bore on the reliability of the victim's identification of the defendant; (2) refusing to give the defendant's requested instruction on consciousness of guilt, as required by *Commonwealth* v. *Toney,* 385 Mass. 575 (1982); and (3) failing to conduct a colloquy with the defendant to assure that he understood the risks involved in raising racial issues when examining prospective jurors. *Commonwealth* v. *Sanders,* 383 Mass. 637 (1981). The defendant also appeals his kidnapping conviction on the ground that the acts underlying the crime were merely incidental to the rape (presumably the rape conviction on which he was sentenced) and robbery, and that, therefore, the convictions were duplicitous. We transferred the case here on our own motion and now affirm the defendant's convictions.

At trial, the following evidence was introduced. At 9:00 P.M. on April 18, 1983, the victim, a fifteen year old girl, left her home and walked a few blocks to buy some food at a local

---

[1] The judge ordered the verdict filed on the other rape conviction.

convenience store. On her way home, she became aware that she was being followed. She quickened her pace and noticed that the person following her, who turned out to be the defendant, did so also. The victim ran up the driveway of a nearby house. The defendant then jumped from bushes that lined the driveway and pushed the victim against the house. The defendant held a knife against the victim and told her that he would kill her if she was not quiet.

The defendant then dragged or pushed the victim out of the driveway into the street stating that he only intended to take the victim's money. On reaching the opposite side of the street, the victim handed the defendant all the money that she had, a dime. The victim viewed the defendant's face for at least ten seconds.

The defendant then dragged the victim into a bushy, dimly lit area at the side of another house, undressed himself and the victim, and raped her. When a porch light came on, the defendant held his knife to the victim's throat and warned her to keep quiet or he would kill her. He then dressed himself and the victim and dragged her to the rear of the house. After the light went out, the defendant dragged the victim back to the bushy area at the side of the house and raped her again.

Immediately thereafter, the defendant and the victim got dressed. As the victim stepped from the bushes, she saw at the end of the driveway the owner of the property where the rapes had occurred. The victim told the property owner that she had been raped, and ran home. She arrived at her home within forty to forty-five minutes after she had left it to go to the store. She was screaming hysterically. She spoke to her mother. The only thing the mother could understand was "man, knife and bushes." The victim's mother promptly called the police and police arrived at the home before the telephone conversation had been completed.

With her mother present, the victim gave the officers a description of her assailant as being a Puerto Rican male about six feet tall with a small moustache and tight wavy hair pushed behind the ears. In addition, she described him as looking like a gas station attendant, wearing dark blue pants and a blue-green

jacket, and smelling bad. The victim's mother testified that the victim was asked whether she had gotten a look at her assailant, and that she answered, "Oh yes, my God, I will never forget that face."

At about 9:35 that evening, the defendant was observed crawling on the roof of a garage near the scene of the crimes. The observer notified the police who apprehended the defendant on the roof. Approximately ten minutes after the victim had returned to her home, the police brought the victim and her mother to a nearby location to view the defendant. Several officers held the defendant in front of the police cruiser's headlights, and the victim positively identified him as her assailant. The victim's mother testified that after the victim identified the defendant she again stated to a police officer, "I will never forget that face." No more than thirty minutes elapsed from the time the victim arrived home after being attacked until she identified the defendant.

The thrust of the defense was to challenge the victim's identification of the defendant as her assailant. The defendant testified that shortly after the crimes occurred he was on his way to an apartment building in the vicinity of the crimes when he encountered several police vehicles. He was intoxicated and nervous, and he was on probation, so he attempted to avoid the police by heading down a driveway which he hoped would lead to a path to the apartment building. When he discovered that the driveway would not take him to the path, he climbed onto a roof to look for the path. The police took the defendant into custody while he was on the roof. The defendant denied being involved in the crimes, and at trial focused on alleged discrepancies between his appearance and the victim's description of him.

1. *Admissibility of evidence.* The defendant argues that the trial judge committed prejudicial error by admitting in evidence over his objection the victim's mother's testimony that, shortly after the victim's return to her home and again after the victim's identification of the defendant, the victim stated that she would never forget her assailant's face. The defendant points out that the victim was not asked at trial whether she had made that

statement and she gave no testimony concerning it. There was no error. The defendant acknowledges that an identification made outside of court and corroborated by the identifying witness at trial is admissible for probative purposes. See *Commonwealth* v. *Daye,* 393 Mass. 55, 58-62 (1984); Proposed Mass. R.Evid. 801 (d) (1) (C) (1980). But, the defendant argues, the statements challenged here are not made admissible by *Daye.* He asserts that the victim's statements were only inadmissible hearsay, and that their admission in evidence was not only error but was prejudicial error because the victim's out-of-court statements lent credibility to her identification of the defendant as her assailant.

The victim's first statement that she would never forget her assailant's face does not depend on *Commonwealth* v. *Daye, supra,* for its admissibility. Hearsay evidence may be admissible under exceptions to the hearsay rule other than the exception articulated in *Daye. Commonwealth* v. *Mendrala,* 20 Mass. App. Ct. 398, 401 (1985). Although the record does not disclose the judge's rationale, nothing in the record suggests that an error was committed. The judge would have been well within his discretion in admitting the evidence as a spontaneous exclamation, occurring while the declarant was in a state of hysteria within a few minutes after she suffered severe trauma. "The judge could well have concluded within his 'broad discretion' that [the victim's statement was] made 'before there [had] been time to contrive and misrepresent,'" *Commonwealth* v. *Sellon,* 380 Mass. 220, 229 (1980), quoting *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 223 (1973), and that the statement, therefore, should be admitted.[2]

The victim's second statement was made when the victim identified the defendant while he was in police custody. Although the record is not entirely clear, it appears that the judge admitted evidence of the victim's second statement (that she would not forget her assailant's face) because the statement

---

[2] We need not consider the Commonwealth's argument that the victim's statement was also admissible as evidence of a fresh complaint. See *Commonwealth* v. *Bailey,* 370 Mass. 388 (1976).

was "directly involved with the identification." Assuming that to have been the judge's reasoning, we agree with it.

The clear lesson of *Daye* is that a nonidentifying witness may give probative testimony concerning an extrajudicial identification made by another witness who corroborates that identification at trial. *Id.* at 60-63. Of course, "testimony by a nonidentifying witness that differs in material respects from the testimony of the identifying witness concerning a particular extrajudicial identification or that concerns an extrajudicial identification at a different time or place not acknowledged by the identifying witness cannot be considered corroborative or probative and remains within the hearsay proscription." *Id.* at 60 n.8. Here, not only the victim's mother, but the victim as well, testified that shortly after the criminal events the victim identified the defendant as he was being held by the police in front of cruiser headlights. Although the mother, and not the victim, testified that, after identifying the defendant, the victim told the police that she would never forget the defendant's face, the victim did not deny that she had made that statement. The judge could properly view the alleged second statement by the victim as part of her extrajudicial identification of the defendant, and he properly could have concluded that there was sufficient corroboration of that identification to make it admissible in its entirety.[3]

2. *Jury Instruction: consciousness of guilt.* The defendant filed written requests for jury instructions containing the language that we suggested in *Commonwealth* v. *Toney,* 385 Mass. 575, 585 & n.6 (1982), would be appropriate "to caution the jury on the dangers inherent in drawing the inference of guilt from the fact of flight." In *Commonwealth* v. *Matos,* 394 Mass. 563, 566 (1985), we repeated the direction that, if the defendant makes a proper request, the judge should give the *Toney*-type instructions "in appropriate language." The judge gave the jury a somewhat lengthy instruction con-

---

[3] In view of our holding, we need not consider whether the judge's evidentiary ruling should be upheld on the ground that the victim's second statement was admissible as a spontaneous exclamation or as part of a fresh complaint.

cerning the proper use of evidence of flight to establish con-
sciousness of guilt, and of some of the dangers presented by
that type of evidence. At the conclusion of the instructions,
defense counsel objected to the instructions in the language
set forth in the margin.[4] The statement of objections did not
satisfy the "fundamental rule of practice that where a party
alleges error in a charge he must bring the alleged error to the
attention of the judge in specific terms in order to give the
judge an opportunity to rectify the error, if any." *Common-
wealth* v. *Reid,* 384 Mass. 247, 258 (1981), quoting *Common-
wealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). See
Mass.R.Crim.P. 24 (b), 378 Mass. 895 (1979).

In any event, even if the objection had been sufficient, the
instructions did not contain the flaw argued by the defendant.
According to the defendant, "[t]he court's directive that an
innocent person may flee or conceal himself because he is
afraid that the truth will not secure his innocence was wide of
the mark. A properly instructed jury could have found, on the
basis of Rivera's testimony, that Rivera's flight from the area
evinced a consciousness of guilt concerning his probation and
not consciousness of guilt of the offense on trial." We construe
the defendant's argument as a contention that the judge should
have instructed the jury that they might consider whether the
defendant's flight from the police was motivated by fear of
apprehension for a reason unconnected with the crimes for
which he was being tried. That instruction was substantially
and adequately given. The judge told the jury: "Common fair-
ness dictates that before you draw an inference of guilt on the
crimes charged you should be satisfied beyond a doubt that
the acts and the words in fact disclose consciousness of guilt

---

[4] DEFENSE COUNSEL: "I also object to the consciousness of guilt charge
because it wasn't the one I requested, first of all. Second of all, I don't
think that it adequately covered the aspects of why innocent people some-
times may flee which are two things, there were two specific points on that
that I specifically requested. So I state my objection to that."

THE JUDGE: "For the record, I think I incorporated your specific request
in my charge."

Appellate counsel did not represent the defendant at trial.

and not something else. If you are satisfied, then you should draw the inference and you should have the courage to draw it. If on the other hand there exists any reasonable basis for the conduct which is alleged to be consciousnes[s] of guilt which is consistent with innocence, then it's your obligation to give the defendant that interpretation."

3. *Colloquy*. Prior to trial, defense counsel moved under G. L. c. 234, § 28 (1984 ed.), that prospective jurors be individually interrogated about possible racial prejudice. The judge acquiesced, and asked three race-related questions of each prospective juror individually. However, he did not conduct a colloquy with the defendant personally to make sure that the motion came from the defendant himself and that the defendant's insistence on such questions was made with an understanding that they "may activate latent racial bias in certain prospective jurors or may insult others without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice." *Commonwealth* v. *Lumley,* 367 Mass. 213, 217 (1975). See *Commonwealth* v. *Sanders,* 383 Mass. 637, 641 (1981). The judge's failure to conduct such a colloquy on his own motion was error, and no objection was necessary to preserve the defendant's right of review. *Commonwealth* v. *A Juvenile (No. 2),* 396 Mass. 215, 223-224 (1985). Therefore, it is necessary to consider whether the defendant is entitled to a new trial.

In *Commonwealth* v. *A Juvenile (No. 2), supra* at 224-225, we held that the judge's failure to conduct a colloquy with the defendant concerning the advisability of asking prospective jurors race-related questions, although error, was reversible only if the defendant can show on appeal that the error "possibly weakened his case in some significant way . . . ." *Id.* at 224, quoting *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983). In *Commonwealth* v. *A Juvenile (No. 2), supra,* we concluded that the guilty verdict could "be attributed to the overwhelming evidence of guilt presented, rather than to any animosity toward the defendant that might have been created by the race-related voir dire questioning," *id.* at 225, and we affirmed the judgment below. We employ the same analysis here and conclude that

the error was not reversible. The Commonwealth's case was strong. The only contested issue was whether the defendant was the assailant, and on this issue the evidence favoring the Commonwealth was highly persuasive if not overwhelming. It is highly unlikely that the judge's failure to conduct the colloquy was a factor in the verdicts.

4. *Alleged duplicitous convictions.* The defendant was convicted of aggravated rape of a child (G. L. c. 265, § 22A), armed robbery (G. L. c. 265, § 17), and kidnapping (G. L. c. 265, § 26). At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty on the kidnapping charge on the ground that the alleged kidnapping was merely incidental to, and therefore not separate from, the alleged rape and robbery. The judge denied the motion.[5] The defendant did not file a postverdict motion to dismiss the kidnapping indictment, but, even if that would have been appropriate, "we will take notice on our own motion of duplication of sentences." *Commonwealth* v. *Stewart,* 375 Mass. 380, 393 (1978).

The defendant's argument that the convictions for rape and kidnapping and for robbery and kidnapping were duplicitous appears to be premised on the assumption that the rape and kidnapping convictions were based on a single act or incident, and that the robbery and kidnapping convictions were also based on a single act. Starting with that assumption, the defendant invites our attention to cases such as *Morey* v. *Commonwealth,* 108 Mass. 433 (1871), and *Commonwealth* v. *Jones,* 382 Mass. 387 (1981). We held in *Morey* that "[a] single act may be an offence against two statutes"; that a defendant may be prosecuted and punished for several statutory or common law crimes on the basis of a single act if each crime requires

---

[5] Even if the rape and kidnapping charges or the robbery and kidnapping charges would have been duplicitous, the judge correctly denied the motion. In those circumstances, the duplicitous charges should be submitted to the jury, and if guilty verdicts are returned, the judge should then "dismiss the less serious charge or charges prior to entering a judgment of conviction and sentencing on the most serious crime." *Commonwealth* v. *Jones,* 382 Mass. 387, 395 (1981).

proof of a fact that the other does not. *Id*. at 434. See *Commonwealth* v. *Crocker,* 384 Mass. 353, 357-361 (1981). In *Jones,* we held that even when the *Morey* standard for permitting separate punishments for a single incident is satisfied, the several offenses may be "sufficiently closely related so as to preclude punishment on both." *Id*. at 394. In *Jones,* a jury convicted the defendant of manslaughter, homicide by motor vehicle, and operating so as to endanger arising out of a single act of operating a motor vehicle. We recognized that a conviction of vehicular homicide under G. L. 90, § 24G, requires proof of facts not required for manslaughter, that is, operation of a motor vehicle on a public way, and that manslaughter requires proof of a fact not required for vehicular homicide, that is, wanton or reckless conduct, so that the *Morey* standard was met. Nevertheless, we concluded that the Legislature did not intend to punish a defendant for homicide by motor vehicle or operating so as to endanger if he is already being punished for manslaughter arising out of the same incident, *id*. at 394, and we ordered that the indictments for the less serious offenses be dismissed.

In this case, we do not reach the questions confronted in *Morey* and *Jones* unless we first determine that the conduct on which the kidnapping conviction was based necessarily was the same conduct on which the rape or robbery convictions were based. We hold that the kidnapping conviction was not necessarily based on the same act or incident that constituted either the rape or the robbery, and that therefore separate convictions and punishments for kidnapping, rape and robbery were appropriate.

*People* v. *Cassidy,* 40 N.Y.2d 763 (1976), involved three distinct cases in which the New York Court of Appeals reaffirmed the so-called "merger doctrine." The court described the merger doctrine as "intend[ing] to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." *Id*. at 767. The defendant rightly argues that the facts in the present case

are indistinguishable in principle from the facts in the three cases decided in *People* v. *Cassidy, supra.* The New York court held in each of those cases that the indictment for kidnapping had been dismissed properly because the detention of the victim was only an incidental means to the accomplishment of crimes of assault or rape. *Id.* at 768.

In effect, the court in *People* v. *Cassidy, supra,* treated the confinement and asportation of the victims thereafter sexually assaulted as a single act or incident including the assault. Although the restraint that is an integral part of rape and of robbery may be one with the rape or the robbery itself, we are unwilling to adopt a rule that requires the treatment of confinement or asportation used as a means to facilitate the commission of such crimes as merged in the substantive crime. We hold, as did the Appeals Court in *Commonwealth* v. *Sumner,* 18 Mass. App. Ct. 349, 352-353 (1984), and *Commonwealth* v. *Vasquez,* 11 Mass. App. Ct. 261, 267-268 (1981), that the evidence in this case was sufficient to warrant the jury in finding kidnapping separate and apart from both the rape and the robbery.

*Judgments affirmed.*