COMMONWEALTH *vs.* ROBERT J. FULLER.

Berkshire. January 10, 1986. — May 1, 1986.

Present: GRANT, PERRETTA, & WARNER, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Spontaneous utterance, Judicial discretion, Relevancy and materiality. *Practice, Criminal,* Instructions to jury. *Intent.*

At the trial of indictments arising out of the sexual abuse of a three year old girl, the judge properly exercised his discretion in permitting testimony of the child's mother relating certain statements concerning the defendant's alleged acts, made by the child in response to inquiries by the mother shortly after the incident had occurred, on the theory that, in the circumstances, the child's statements were spontaneous exclamations admissible as an exception to the hearsay rule. [155-156]

The judge at the trial of indictments arising out of the sexual abuse of a three year old girl properly exercised his discretion in excluding as collateral and not relevant a certain line of inquiry, which the defendant alleged had precluded him from questioning the child's mother as to her state of mind or degree of agitation at the time her daughter had made statements to her concerning his alleged acts, where the mother had readily admitted that she was extremely upset, and defense counsel had argued during his summation that the mother's observations and judgment were colored by her agitation and concern. [157]

At the trial of indictments arising out of the sexual abuse of a three year old girl, the defendant was not prejudiced by the prosecutor's remark to the jury that "she wouldn't have that kind of idea in her head unless something like that happened to her" where, as the defendant did not deny the acts described by the child but only how they happened, the child's source of knowledge was immaterial and the isolated remark was insignificant. [157-158]

At the trial of indictments charging the defendant with statutory rape and indecent assault and battery upon a child under fourteen years of age, the judge's instructions adequately and clearly informed the jury that, with respect to the indictment charging statutory rape, the Commonwealth was required to prove beyond a reasonable doubt that the defendant's conduct was intentional. [158-159]

INDICTMENTS found and returned in the Superior Court Department on November 7, 1984.

The cases were tried before *William W. Simons,* J.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for the defendant.

*Daniel A. Ford,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. At the defendant's trial on charges arising out of his sexual abuse[1] of a three year old girl, the child's mother was allowed to relate her daughter's statements to her concerning the defendant's acts. These statements were offered as spontaneous exclamations of the child and not as evidence of a fresh complaint by her. The child did not appear at trial, and the defendant was not present when she made her statements to her mother. The principal issue on appeal is whether the judge was correct in ruling that the Commonwealth could rely on the child's out-of-court statements to establish the defendant's guilt. We affirm.

1. *The facts.* We relate the circumstances of the child's statements, as testified to by the mother. About 1:30 P..M. on October 12, 1984, the mother went out to look for employment. She left her daughter at home in the defendant's care. The mother did not mention to the defendant, who was then seventeen years of age and who had babysat for the child on numerous occasions, when she might be expected to return.

A little less than two hours later, the mother returned to the two-level house and found no one downstairs. She heard "shuffling" noises from the upper level. She went upstairs, saw that the bathroom door was closed, and called out, "Hey." The child opened the door and came out to the hallway. Her pants and underpants were down to her knees, and the defendant was zipping up his trousers. The mother asked what was going on, and the defendant explained that he had been going to the bathroom when the child had come in and told that she also had to use the bathroom.

Taking the child downstairs to the kitchen, the mother placed her on the table and examined her vagina for redness or other

---

[1] The defendant was found guilty on indictments charging him with statutory rape, G. L. c. 265, § 23, and indecent assault and battery upon a child under fourteen years of age. G. L. c. 265, § 13B.

signs of having been touched. When the defendant came down-stairs, the mother told him that she was going out but that she would be back shortly.[2] She drove about a block from her house to a doctor's office. The mother wanted an appointment for the child because, as she told the doctor, she "knew for sure that something had happened." The doctor agreed to see the child immediately.

When the mother went back to the house and told the child that she was going to go to. the doctor, the little girl began to whimper and talk about a "boo-boo" on her foot. During the previous week, the child had caught her foot in the spokes of a bicycle wheel. The defendant, described by the mother as appearing "nervous" at this time, patted the child on the back, telling her she did not have a "boo-boo."

During the drive to the doctor's office, the mother asked her child if the defendant had touched her. When the child said yes, the mother asked where. The little girl responded with a child's readily translatable word for vagina. The mother asked whether the defendant had done anything else, and the child answered that she "ate" the defendant's penis, using an easily understood reference to a penis. The mother stated that during the ride the child did not cause any problem or trouble. She seemed curious about what was happening.

After being arrested and questioned by the police, the defendant signed a statement which was put in evidence.[3] In this statement, the defendant repudiated his original version of the incident, that he had accidently touched the child while helping her go to the bathroom, and inculpated himself with the following: "Detective Eaton asked me if I had meant to touch [the child's] vagina. At first I told him that I did not but then told him that I did mean to touch [her] vagina;" and, "I did have [the child] put her mouth on my penis. . . . This happened only for a second, [she] put her mouth around the outside of

---

[2] The mother explained that she left her daughter with the defendant because she was upset and not thinking.

[3] The defendant does not challenge on appeal the denial of his motion to suppress this statement.

my penis like putting her finger in her mouth . . . I was standing there watching [her] and I pulled my underpants down away from my penis and showed [her] my penis. I said to [her], 'Look [      ].' [She] came over and looked at my penis and opened her mouth and put the end of my penis on her lips of her mouth. This is when [the mother] came home and [the child] opened the door to the bathroom."

2. *The hearsay evidence.* Exceptions to the rule against hearsay evidence are founded upon certain factors, depending upon the exception claimed, which demonstrate that the out-of-court statement is sufficiently reliable to constitute admissible evidence of the truth of the matter asserted in the statement. Statements made under the stress of excitement are recognized as reliable because the excitement is deemed to have overcome the ability to contrive and to fabricate. Hence, the spontaneous exclamation exception to the hearsay rule requires a showing that an event produced a state of nervous excitement during which the statements concerning the precipitating event were made. See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 223 (1973); *Commonwealth* v. *Sellon,* 380 Mass. 220, 229-230 (1980); *Commonwealth* v. *Puleio,* 394 Mass. 101, 104-105 (1985). See generally 6 Wigmore, Evidence § 1750 (Chadbourn rev. 1976).

In determining whether a spontaneous exclamation meets the tests of admissibility, a trial judge is given "broad discretion" which should not be "revised" except in "clear cases." *Rocco* v. *Boston-Leader, Inc.,* 340 Mass. 195, 197 (1960). See also *Commonwealth* v. *Hampton,* 351 Mass. 447, 449 (1966); *Commonwealth* v. *Rivera,* 397 Mass. 244, 248 (1986). Thr trial judge stated the reasons for his ruling: "[B]ased on the age of the child, the manner in which she answered — didn't simply . . . say yes or no or adopt the facts in the question — the close period in time to the events, the added issue of going to the Doctor, I find that the utterance offered was made in such circumstances as would reasonably tend to negate any premeditation; and that they were close in time to the event so as to be admissible under the spontaneous utterance exception to the hearsay rule."

Wanting exactitude in the application of the exception to the circumstances of this case, the defendant argues that the child's exclamations were not the result of excitement. Although the child might not have been "excited" within the usual meaning of the word, enough had transpired that afternoon to unsettle her and make her whimper at the notion of seeing a doctor, even though for an injury purportedly sustained a week earlier and of no present significance.

Of more importance, it is not the quality or degree of the excitement which renders the exclamation admissible. Rather, the "admissibility of the utterance must rest on the fact that it was 'spontaneous to a degree which reasonably negatived premediation or possible fabrication, and tended to qualify, characterize and explain' the [event]." *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. at 196, quoting from *Correira* v. *Boston Motor Tours, Inc.*, 270 Mass. 88, 91 (1930). Cf. Fed.R.Evid. 803(2), Advisory Committee Note. Focusing on the degree of spontaneity (rather than the degree of excitement) is particularly appropriate when the statement is made by a child too young to become excited about the event in issue because he or she cannot appreciate its gravity.

In the present case, it was well within the trial judge's broad range of discretion to conclude that the child's statements were sufficiently contemporaneous with the event to negative any notion of fabrication, see *Commonwealth* v. *Rivera*, 397 Mass. at 248, and that neither the number nor the substance of the mother's inquiries diminished the reliability of the child's responses, see *Commonwealth* v. *Burden,* 15 Mass. App. Ct. 666, 676 (1983). We think it worthy of some note that the reliability of the child's statements is enhanced by their corroboration by the defendant in his signed statement, given with his knowledge of the mother's observations of him and the child that afternoon, her examination of the child, and her taking of the child to the doctor. Upon consideration of the totality of the circumstances here presented, we conclude that the child's statements are within the ambit of the spontaneous exclamation exception to the rule against hearsay.

3. *The mother's state of mind.* When the prosecutor objected to certain questions by defense counsel, there was a side bar conference during which the relevancy of the proposed inquiries was advanced as follows. In the late spring, early summer months prior to the present incident, the child had attended a nursery school. She was asked to leave, however, because she was prone to tantrums. While attending the school, she complained to her mother about vaginal pain. Subsequent to her attendance at the school, the school became the focus of an investigation and publicity concerning one of its employees engaging in oral sex with various children.[4] On the day in question, October 12, 1984, the mother had read one of the newspaper articles after she left her house at 1:30 P.M., and had become sufficiently upset to return home earlier than she had planned. The defendant contended that these matters were relevant to cast doubt upon the mother's credibility by showing that she might have overreacted to her observations and have been so agitated as to influence the child's responses. The trial judge concluded that the proposed line of inquiry was as to a "totally collateral issue and not relevant."

We think it important to note that, contrary to the represen-. tations of defense counsel in her brief, the trial judge did not preclude questioning of the mother as to her state of mind or the degree of her agitation. The mother readily admitted that she was extremely upset, and defense counsel argued during his summation that the mother's observations and judgment were colored by her agitation and concern. What the trial judge excluded as collateral were the intended inquiries concerning her knowledge of and reaction to the allegations concerning the nursery school. The trial judge's ruling was a proper exercise of his sound discretion. See *Commonwealth* v. *McDermott,* 393 Mass. 451, 455-456 (1984).

By way of a footnote in his brief, the defendant advances an argument not made to the trial judge, that is, that the information was relevant to show how the child could have gained knowledge of the sexual behavior she described other than by

---

[4] See *Commonwealth* v. *Baran,* 21 Mass. App. Ct. 989 (1986).

experience with the defendant. Although we could pass this contention easily because it was not made to the trial judge or presented to us in a manner contemplated by Mass.R.A.P. 16(a) (4), as amended, 367 Mass. 921 (1975), we think it appropriate for us to comment.

In cases involving sexual abuse of young children, there is danger in arguing to a jury, as done here, that "she wouldn't have that kind of idea in her head unless something like that happened to her." The essence of such argument is that the accusation itself proves the act. Here, however, the statement is of minimal, if any, consequence for the following reason. The acts were not denied by the defendant. Rather, at trial the defendant testified to the effect that his inculpatory statements to the police were involuntary and that his original version of the events was correct.

According to the defendant's first statement to the police and his testimony at trial, he touched the child's vagina while assisting her to go to the bathroom. The oral sex was at the instigation of the child: after he had finished urinating and as he turned to help the child, she grabbed his penis and put it to her lips. The defendant was "stunned" and "embarrassed." The child was laughing and said to him, "Mommy watches these on movies." This statement would be in reference to the defendant's assertion (made known to the jury over the Commonwealth's objection and the trial judge's warning that the defendant could be hurting himself) that the child's mother and father watched pornographic movies on a home video recorder.

As the defendant did not deny the acts described by the child but only how they happened, the child's source of knowledge was immaterial and the prosecutor's isolated remark insignificant.

4. *The jury instructions.* In instructing the jury, the trial judge informed them clearly and precisely on intent, stating, among other things, that the Commonwealth was required to prove beyond a reasonable doubt that the "defendant acted with the required intent." The trial judge further instructed the jury, in respect to the indictment charging indecent assault and

battery, that the Commonwealth had to prove that the defendant "committed an intentional — not accidental, but intentional — unconsented to and indecent touching." At the conclusion of the instructions, defense counsel objected to the adequacy of the instruction on intent as it related to the indictment charging statutory rape, especially in view of the theory of defense: "whether there was any intention on the part of my client to either trigger that or to have any sort of sexual relationship with the child." The trial judge refused to instruct further on the defendant's intent and noted the objection of counsel.

In deliberating, the jury asked whether the defendant had to have "intended to insert his penis" in the child's mouth and whether "penetration" had to have occurred. The trial judge answered the first question: "Yes. It's the Commonwealth's burden to prove beyond a reasonable doubt that the defendant intended the act to occur." As for penetration, the trial judge instructed that "[p]enetration, however slight it may be, is required, but there has to be some penetration." He then repeated the elements of the crime of statutory rape. In so doing, he did not restate the answer to the question he had given moments earlier concerning the defendant's intent. The defendant voiced no objection.

From this sequence of events, the defendant now argues that the jury were not adequately and clearly instructed that, in respect to the indictment charging statutory rape, the Commonwealth was required to prove beyond a reasonable doubt that the defendant's conduct was intentional. We see no error, let alone a substantial risk of a miscarriage of justice.

*Judgments affirmed.*