COMMONWEALTH VS. JIMMY LEE HORNE. No. 88-P-142. November 21, 1988. *Practice, Criminal*, Examination of jurors, Instructions to jury, Mistrial. *Evidence*, Prior consistent statement, Recent invention. *Identification*.

Jimmy Lee Horne was convicted by a jury of armed robbery. The criminal episode from which the case arose was a holdup at knife point which occurred on the night of January 5, 1987, in the men's room of a Lowell pub. Daniel Correa, the victim, identified the defendant as the man

---

who forcibly relieved him of $270. Corroboration came from the bartender, who saw the defendant come into the pub, head straight for the men's room, and leave the men's room and the establishment at approximately the time Correa reported he had been robbed. The accuracy of these identifications was the central issue at trial, the defendant having testified that he had not been in McCullough's, the pub in question, on the night of the crime.

1. *Questions to jurors about racial bias.* Upon the request of defense counsel, the trial judge asked the jury venire, "The defendant in this case is black. Are any of you conscious of any feelings you might have concerning the race of the defendant?" No juror responded. Under G. L. c. 234, § 28, the question was appropriate because the victim is white. See, e.g., *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. 215, 220-221 (1985); *Commonwealth* v. *Washington*, 402 Mass. 769, 772 (1988). Since the opinion in *Commonwealth* v. *Sanders*, 383 Mass. 637, 641 (1981), however, the trial judge, before granting a motion to question jurors about racial bias, is to discuss with the defendant himself whether the defendant has knowingly participated in his lawyer's decision to probe the jurors for racial bias and whether the defendant is conscious that the very act of questioning may unleash latent racial feelings. *Commonwealth* v. *Washington*, 402 Mass. at 772-773 & n.4.

The judge failed to engage the defendant in a colloquy on these subjects. In and of itself, that failure does not require reversal if the evidence to convict was strong enough to overcome the possibility that the verdict was based on racial prejudice. *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. at 224. *Commonwealth* v. *Rivera*, 397 Mass. 244, 252 (1986). *Commonwealth* v. *Washington*, 402 Mass. at 773. Measured against what sufficed in the *A Juvenile (No. 2)* and *Rivera* cases, the evidence against Horne had sufficient cumulative force to overcome omission of a *Sanders* colloquy. During the robbery another customer of McCullough's Pub entered the men's room and the robber ordered him out (we shall hear more of that third man below). The incident prolonged the time during which the victim could observe the robber under good lighting conditions. Immediately after the robbery the victim picked the defendant's photograph from arrays in two books which contained about 100 pictures. At a showup arranged by the police shortly after the robbery, the victim identified the defendant as the man who had robbed him. The description which the victim furnished to the police was relatively precise; it included details about height, build, facial hair, head hair, lip size, and nose shape. The victim reported to the police that the robber had held a grey utility knife to his throat. When they arrested the defendant, the police found a grey utility knife on his person. Correa, the victim, identified the knife as the one which his assailant had used. Perhaps most damning to the defendant's assertion that he was not in McCullough's that night, and, therefore, could not have been the man who committed the crime, was the testimony of the bartender that he knew the defendant as a customer of McCollough's. The bartender had seen the

defendant enter the pub, go to the men's room, and then leave without buying a drink or socializing. When arrested, the defendant was drinking in a neighboring barroom. By comparison, the prosecution's case in *Commonwealth* v. *Washington, supra,* was marginal. There the victims had been obliged to make identification from their observations on a dark path; the defendant had a thrice-corroborated alibi; he had a look-alike brother; and the pistol used was not found.

2. *Prior consistent statement.* As a general rule, a prior consistent statement may not be admitted in evidence. *Commonwealth* v. *Jenkins,* 10 Gray 485, 488-489 (1858). *Commonwealth* v. *Tucker,* 189 Mass. 457, 479-485 (1905). *Commonwealth* v. *Zukoski,* 370 Mass. 23, 26 (1976). *Commonwealth* v. *Darden,* 5 Mass. App. Ct. 522, 527 (1977). *Commonwealth* v. *Binienda,* 20 Mass. App. Ct. 756, 758 (1985). That rule came in play on cross-examination of the bartender who had testified to the defendant's physical presence in McCullough's when the robbery occurred. Cross-examination brought out a prior statement, made April 7, 1987, to a police investigator that the bartender had not seen the defendant on the night of the crime. On redirect, the bartender was permitted to explain why he had dissembled in April ("Well, I figured I was a bartender and sort of a friend of both, so I just didn't want to get involved, just stay neutral-like.") and to testify that on January 5, 1987, the night of the robbery, he had told a police officer "he [i.e., the defendant] was in earlier in the night."

To the general rule of exclusion of prior consistent statements there are, as might be expected, exceptions. If it can be made to appear that the inconsistent statement was the product of a peculiar and transient bias or pressure of some kind, the prior consistent statement may be admitted to shore up the consistent in-court statement. *Commonwealth* v. *Jenkins,* 10 Gray at 488-489. *Commonwealth* v. *Zukoski,* 370 Mass. at 26-27, and cases there cited. Woven into the bias or pressure notions is the related idea that, if the purport of the prior inconsistent statement is to expose the in-court statement as a recent contrivance, the prior consistent statement may be received to demonstrate that what the witness said in court was not recently contrived. *Ibid.* Both principles are at work here. The bartender had testified that he had felt himself under pressures which made him want to disassociate himself from the case. The suggestion of the cross-examination was that the bartender had made up for the occasion a statement about the defendant's presence at McCullough's. At least the judge was within his range of discretion in determining that the defense had made a suggestion of recent contrivance. See *Commonwealth* v. *Zukoski,* 370 Mass. at 27; *Commonwealth* v. *Darden,* 5 Mass. App. Ct. at 527-530. Compare *Commonwealth* v. *Tatro,* 4 Mass. App. Ct. 295, 305 (1976); *Commonwealth* v. *Binienda,* 20 Mass. App. Ct. at 759-760. The prior consistent statement was properly allowed.

3. *Instruction to jury on identification.* There is no dispute that the judge gave the cautionary charge about the difficulties inherent in identification

as prescribed by *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 301-302 (1979), to which is appended a set of recommended instructions published in *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972). In addition the defendant wanted the judge to instruct the jurors: "Are you convinced that the witness had sufficient sobriety to have an accurate recollection of the offender?" So particularized an instruction, which may suggest a certain view of the evidence, is not required. See *Commonwealth* v. *Key*, 381 Mass. 19, 27 (1980). See also a case bearing the same name but, in fact, involving a different defendant, *Commonwealth* v. *Key*, 19 Mass. App. Ct. 234, 242-243 (1985). The judge sufficiently instructed the jury about their gauging the capacity of identifying witnesses to observe as a factor in assessing the reliability of the observations. As to the defendant's request that the jury be instructed that interracial identification must be received with special caution, the unpleasant implicit contention, that persons of different race all look alike to the observer, has been rejected in Massachusetts. *Commonwealth* v. *Charles*, 397 Mass. 1, 8 (1986). The judge was right to refuse the request.

4. *Request for mistrial*. Terrence Glenn, a customer, blundered onto the robbery scene in the men's room and was ordered out by the robber on pain of becoming a second victim. During direct examination of the victim, the prosecutor asked: "By the way, do you know whether or not Mr. Glenn knew the defendant?" Before defense counsel could object, the witness answered, "Yes." The judge sustained the virtually simultaneous defense objection and declared the question and answer struck as calling for impermissible hearsay.[1] Glenn was said by the victim to be in North Carolina. At all events Glenn did not appear. The reference to Glenn was fleeting. There was no attempt by the prosecution to argue that Glenn had furnished information about the defendant to the victim or to the police. The judge offered to give a curative instruction to the jurors that they ought not to "consider in any way whether Mr. Glenn knew this defendant or not because Mr. Glenn is not here to testify." The offer was declined. It is unlikely in the extreme that the remark about Glenn knowing the robber tainted the trial or the verdict. See *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 495 (1966); *Commonwealth* v. *Mayo*, 21 Mass. App. Ct. 212, 219-220 (1985). The case for a mistrial is so unpersuasive that the denial of the motion for one could not be an abuse of the discretion conferred upon a trial judge to decide if a mistrial ought to be declared. *Commonwealth* v. *Simmonds*, 386 Mass. 234, 241 (1982). *Commonwealth* v. *Mayo*, 21 Mass. App. Ct. at 219.

*Judgment affirmed.*

*Michael Lappin*, Committee for Public Counsel Services, for the defendant.
*Richard Birke*, Assistant District Attorney, for the Commonwealth.

---

[1] As asked, the question did not necessarily call for hearsay. The answer might have been that the witness had often seen Glenn and the defendant together. The victim, however, had not testified that he had seen his assailant before, and, therefore, the judge reasonably anticipated that the witness would say Glenn had told him he knew the assailant.